## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QUIET COMMUNITIES, INC.<br>60 Thoreau St.<br>Suite 261<br>Concord, MA 01742; *and*<br><br>JEANNE M. KEMPTHORNE,<br>*Plaintiffs*.<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY; *and*<br><br>MICHAEL S. REGAN, in his official capacity as<br>Administrator,<br><br>United States Environmental Protection Agency<br>Mail Code 1101A<br>1200 Pennsylvania Ave., N.W.<br>Washington, DC 20460,<br>*Defendants*. | Case No. 1:23-CV-1649 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     This is a suit to compel the United States Environmental Protection Agency
("EPA" or "the Agency") and its Administrator to take actions mandated by the United States
Congress in enacting the Noise Control Act, 42 U.S.C. §§ 4901 to 4918 ("the Noise Control Act"
or "the Act"), as amended, to protect public health and the environment from harmful noise
pollution.

1

2.      Forty-one years ago, in 1982, EPA shut down the Office of Noise Abatement and Control, the Noise Enforcement Division of the Office of Mobile Source and Noise Enforcement, and ten regional noise programs, and abandoned its duties under the Noise Control Act.

3.      As a result, noise pollution has gone unstudied and unregulated by EPA—for four decades—contrary to Congressional commands that require otherwise.

4.      EPA's failure to act and its unreasonably delayed and unlawfully withheld actions violate the Noise Control Act and the Administrative Procedure Act, respectively. Plaintiffs Quiet Communities, Inc., and Jeanne M. Kempthorne seek in this action nothing more than to compel EPA to perform its nondiscretionary statutory duties as lawfully imposed by Congress under the Act.

## JURISDICTION AND VENUE

5.      This action arises under the Noise Control Act, 42 U.S.C. §§ 4901 to 4918, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 to 706.

6.      This Court has subject matter jurisdiction of this matter under 42 U.S.C. § 4911(a) (Noise Control Act citizen suit provision), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus action).

7.      Plaintiffs have a right to bring this action under 42 U.S.C. § 4911(a)(2)(A), 5 U.S.C. § 702, and 28 U.S.C. § 1361.

8.      The relief requested is authorized by 42 U.S.C. §§ 4911(a), (d), and (e); 28 U.S.C. §§ 2201–2202; 28 U.S.C. § 1361; and 5 U.S.C. § 706(1).

9.      Venue is properly vested in this Court under 28 U.S.C. § 1391(e) because the United States District Court for the District of Columbia is a judicial district in which a substantial part of the events or omissions giving rise to the claims took place.

## NOTICE

10.     On March 17, 2023, Plaintiffs served the Administrator of EPA and the Attorney General of the United States with written notice of the violations alleged in this Complaint and of Plaintiffs' intent to sue, via certified mail and email, as required by 42 U.S.C. § 4911(b)(2) and EPA's regulations, 40 C.F.R. § 210.2(b).

11.     As more than sixty (60) days have passed since the Administrator received this notice, Plaintiffs have satisfied the notice requirements of 42 U.S.C. § 4911(b)(2).

12.     The Administrator has not acted to remedy the violations set forth in the notice and alleged in this Complaint.

## PARTIES

13.     Plaintiff Quiet Communities, Inc., is a 501(c)(3) nonprofit corporation with its headquarters located in Concord, Massachusetts. Quiet Communities is a public interest organization dedicated to helping communities reduce health and environmental harm from noise and pollution. Quiet Communities has over 200 formal members and 25 professional advisors. The organization has worked with hundreds of communities nationwide through its programs and activities.

14.     Plaintiff Quiet Communities brings this action on behalf of itself and its members.

15.     Plaintiff Jeanne M. Kempthorne ("Kempthorne") is an individual who resides in the District of Massachusetts. She has suffered and continues to suffer from the harms of noise

pollution and has been and continues to be adversely affected by EPA's failure to fulfill its duties under the Noise Control Act.

16.    Defendant EPA is an agency of the United States charged with nondiscretionary duties under 42 U.S.C. §§ 4901 to 4918.

17.    Defendant Michael S. Regan is the Administrator of EPA ("Administrator"), the chief Federal officer responsible for ensuring that EPA fulfills its legal obligations under the various statutes that it administers. The Administrator is charged with the duty to implement the commands of the Noise Control Act. Administrator Regan is sued in his official capacity.

## LEGAL AND FACTUAL BACKGROUND

18.    In 1972, Congress enacted the Noise Control Act "to promote an environment for all Americans free from noise that jeopardizes their health or welfare." 42 U.S.C. § 4901(b).

19.    The Act's purpose is "to establish a means for effective coordination of Federal research and activities in noise control, to authorize the establishment of Federal noise emission standards for products distributed in commerce, and to provide information to the public respecting the noise emission and noise reduction characteristics of such products." *Id.*

20.    Congress recognized that "Federal action is essential to deal with major noise sources in commerce control of which require national uniformity of treatment." 42 U.S.C. § 4901(a)(3).

21.    In 1978, Congress strengthened its noise control efforts when it passed the Quiet Communities Act, 42 U.S.C. § 4913, as an amendment to the Noise Control Act, directing EPA to provide extensive informational, technical, and financial assistance to State and local governments to facilitate their noise control efforts.

22.     In the Noise Control Act and its amendments, Congress imposed numerous nondiscretionary duties on EPA. 42 U.S.C. §§ 4901–4918.

23.     During the first eight years following the enactment of the Noise Control Act, EPA actively carried out the mandates of the Act, conducting research, publishing mandated documents, writing regulations, and assisting local communities.

24.     In furtherance of its duties under the Act, EPA created an Office of Noise Abatement and Control.

25.     In 1982, EPA stopped all work mandated by the Act.

**Duties, History, and Failures Related to Criteria and Levels Documents**

26.     Section 5 of the Act, 42 U.S.C. § 4904, mandates that EPA "shall" (1) "develop and publish criteria with respect to noise" that "reflect the scientific knowledge most useful in indicating the kind and extent of all identifiable effects on the public health or welfare which may be expected from differing quantities and qualities of noise"; and (2) "publish information on the levels of environmental noise the attainment and maintenance of which in defined areas under various conditions are requisite to protect the public health and welfare." 42 U.S.C. § 4904(a).

27.     These Section 5(a) reports—which EPA refers to as the Criteria Document and Levels Document—"shall" be reviewed and revised or supplemented by EPA "from time to time." 42 U.S.C. § 4904(c).

28.     In 1973, pursuant to Section 5(a)(1), EPA published a Criteria Document examining the available scientific knowledge about the impacts of noise on health and welfare.

29.     Since 1973, there have been advances in scientific understanding about the health harms caused by excessive exposure to noise.

30.     EPA has not revised or supplemented the Criteria Document since 1973.

31.     In 1974, pursuant to Section 5(a)(2), EPA published a Levels Document identifying the levels of environmental noise above which public health and welfare is threatened or compromised.

32.     Since 1974, there have been advances in scientific understanding of the levels of environmental noise that can cause harm.

33.     EPA has not revised or supplemented the Levels Document since 1974.

34.     By not updating the Criteria or Levels Documents to reflect advances in science, EPA deprives all levels of government, communities, individuals, public, health, and education professionals, and organizations like Quiet Communities of the information needed to properly assess and respond to risks posed by excessive exposure to noise.

**Duties, History, and Failures Related to Identifying Major Sources of Noise**

35.     Section 5(b) of the Act directs EPA to "compile and publish a report or series of reports (1) identifying products (or classes of products) which in [its] judgment are major sources of noise, and (2) giving information on techniques for control of noise from such products, including available data on the technology, costs, and alternative methods of noise control." 42 U.S.C. § 4904(b).

36.     Section 5(b) directs that the "*first* such report shall be published not later than eighteen months after" the Act's enactment. 42 U.S.C. § 4904(b) (emphasis added).

37.     Reports identifying major sources of noise must be reviewed and revised or supplemented by EPA "from time to time." 42 U.S.C. § 4904(c).

38.     As required by Section 5(b), EPA issued four reports between 1974 and 1977 identifying several major sources of noise: portable air compressors, medium and heavy trucks,

wheel and crawler tractors, truck-mounted solid waste compactors, motorcycles and motorcycle replacement exhaust systems, buses, truck transport refrigeration units, power lawn mowers, pavement breakers, and rock drills.

39.    There have been many new products and technological developments since the 1970s.

40.    Since 1977, EPA has failed to identify new major sources of noise as required by Section 5(b).

41.    For products identified as major sources of noise under Section 5 of the Act, EPA is required to set noise emission standards through regulations.

42.    Section 6 of the Act provides that EPA "shall publish proposed regulations" within eighteen months of identification. 42 U.S.C. § 4905(a).

43.    Section 6 further provides that such regulations "shall" be prescribed between six months following publication of proposed regulations and twenty-four months after a product is identified as a major source of noise. 42 U.S.C. § 4905(a)(3).

44.    Regulations published under Section 6 "shall include a noise emission standard which shall set limits on noise emissions from such product and shall be a standard which in [EPA's] judgment . . . is requisite to protect the public health and welfare." 42 U.S.C. § 4905(c)(1).

45.    EPA has missed, by over forty years, Section 6(a)'s eighteen-month deadline for publishing proposed regulations for four of the products that EPA identified as major sources of noise in the reports published in the 1970s: power lawn mowers, truck transport refrigeration units, pavement breakers, and rock drills.

46.     Because EPA has not identified and regulated major sources of noise as required by Sections 5 and 6, Plaintiffs and Quiet Communities' members are deprived of the protections from harmful noise that Congress mandated.

**Duties, History, and Failures Related to Developing Low-Noise-Emission Products**

47.     EPA's failure to identify major sources of noise and adopt applicable emission standards during the last forty years has other adverse ramifications for EPA's ability to carry out its responsibilities under the Act, like those required by Section 15.

48.     Section 15 of the Act, 42 U.S.C. § 4914, assigns EPA responsibility for developing low-noise-emission products ("LNEPs").

49.     LNEPs are defined under the Act as those that "emit[] noise in amounts significantly below the levels specified in noise emission standards." 42 U.S.C. § 4914(a)(3).

50.     Under Section 15, the "Administrator shall determine which products qualify as [LNEPs]," and the Federal Government "shall" acquire certified LNEPs for "use by the Federal Government in lieu of other products." 42 U.S.C. §§ 4914(b)(1), (c)(1).

51.     EPA issued certification procedures for LNEPs in 1974 through rulemaking.

52.     In 1977, EPA issued a Notice for Proposed Rulemaking for criteria and procedures for EPA to use in certifying products as LNEPs suitable for purchase by the Federal Government.

53.     EPA never finalized this rulemaking.

54.     EPA has not taken any further action to define or certify LNEPs for Federal Government purchase.

55.     For at least forty years, EPA has not facilitated Federal Government purchases of products that avoid excessive noise where possible as Congress mandated.

**Duties, History, and Failures Related to Labeling Products That Cause or Mitigate Harm from Noise**

56.     Section 8 of the Act, 42 U.S.C. § 4907, mandates that EPA "shall by regulation designate any product (or class thereof)—(1) which emits noise capable of adversely affecting the public health or welfare; or (2) which is sold wholly or in part on the basis of its effectiveness in reducing noise." 42 U.S.C. § 4907(a).

57.     For each product designated under Section 8, EPA "shall by regulation require that notice be given to the prospective user of the level of the noise the product emits, or of its effectiveness in reducing noise" through labeling requirements. 42 U.S.C. § 4907(b).

58.     In 1979, EPA finalized general regulations as to the form, location, and methodology of Section 8 product labels.

59.     The only product ever designated as capable of emitting harmful levels of noise under Section 8(a)(1) is portable air compressors.

60.     In more than forty years, EPA has not finalized any other labeling regulations under Sections 8(a)(1) and 8(b) for products capable of emitting noise that adversely affects the public health or welfare.

61.     Because of EPA's failure to carry out its responsibilities under Sections 8(a)(1) and 8(b) of the Act, consumers lack the information they need, and that Congress intended them to have, in order to assess the noise safety of the products they purchase.

62.     In 1979, EPA finalized labeling regulations pursuant to Sections 8(a)(2) and 8(b) for hearing protection devices so users could estimate the degree of mitigation of noise they would receive in wearing the protectors and to assist them in choosing a product with the appropriate level of protection depending on their noise environment.

63.     EPA's 1979 regulations for hearing protection devices are outdated.

64.    The American National Standards Institute has withdrawn the testing standards relied on by EPA's 1979 labeling regulations and replaced them with a more accurate standard.

65.    The withdrawn testing standards return a single number, a device's noise reduction rating ("NRR"), which must be displayed on the hearing protection devices per EPA's 1979 labeling regulations.

66.    NRRs overstate a product's noise reduction and protection capabilities.

67.    For workers, the Occupational Safety and Health Administration ("OSHA") applies a safety factor to devices' NRRs to estimate noise reduction capabilities more accurately. This safety factor subtracts seven decibels from the labeled NRR and reduces that number by 50%. EPA provides no such guidance for consumers.

68.    In 2009, EPA proposed a rule to update the 1979 labeling regulations for hearing protection devices.

69.    After receiving input from trade organizations, manufacturers, researchers, and other Federal agencies, EPA recognized that "[a]ll interested parties generally agree that the existing regulation needs to be revised."

70.    The final comment period closed in late 2009.

71.    Two subsequent hearings were held in 2010.

72.    EPA never published a final rule.

73.    The measuring and testing standards in the existing regulations cannot be meaningfully applied to advanced electronics.

74.    Even though technology in protective devices has advanced, devices utilizing modern technology cannot be sold as hearing protection devices because of the outdated regulations.

75.     By not revising the product labeling requirements under Sections 8(a)(2) and 8(b), EPA deprives Plaintiffs and Quiet Communities' members of the information needed to properly protect themselves from excessive exposure to noise through products sold in the United States for that purpose.

### Duties, History, and Failures Related to Supporting Local and State Governments' Noise Control Efforts

76.     Section 14 of the Noise Control Act was adopted in 1978 "[t]o promote the development of effective State and local noise control programs, to provide an adequate Federal noise control research program designed to meet the objectives of [the Act], and to otherwise carry out the policy of [the Act]." 42 U.S.C. § 4913.

77.     These Quiet Communities Act amendments direct EPA to provide assistance to States, local governments, and regional planning agencies "through the use of grants, contracts, and direct Federal actions." 42 U.S.C. § 4913.

78.     Specifically, Section 14 provides that EPA "shall," among other duties, (a) "develop and disseminate information and educational materials to all segments of the public on the public health and other effects of noise and the most effective means for noise control"; (b) "conduct or finance research . . . on the effects, measurement, and control of noise"; (c) "administer a nationwide Quiet Communities Program" that supports State and local noise control programs in a variety of ways, including through grants, purchases of equipment, development and implementation of equipment monitoring procedures, studies and demonstrations to determine State and local needs, and development of education and training materials; (d) "develop and implement a national noise environmental assessment program"; (e) "establish regional technical assistance centers"; and (f) "provide technical assistance to State and local governments to facilitate their development and enforcement of noise control."

11

79.     By 1980, EPA coordinated 110 regional noise abatement workshops attended by 4,000 noise control officials.

80.     By 1980, EPA established ten regional Technical Assistance Centers.

81.     By 1980, EPA launched Quiet Communities Program research and demonstration projects in three cities to show how communities could initiate and develop noise abatement programs.

82.     By 1982, these efforts ceased and the Technical Assistance Centers disappeared.

83.     EPA has not carried out any of the mandates of Section 14 of the Noise Control Act since 1982.

84.     EPA's failures to carry out the mandates of Section 14 shift the onus to Plaintiffs and Quiet Communities' members suffering from the harms of noise to gather information on safe levels of noise, to educate their communities and local governments on the harms of noise, and to advocate for noise control measures.

**Duties, History, and Failures Related to Coordinating, Consulting, and Reporting on Federal Agency Noise Control Efforts**

85.     Section 4 of the Noise Control Act, 42 U.S.C. § 4903, requires EPA to "coordinate the programs of all Federal agencies relating to noise research and noise control," consult with each Federal agency in prescribing standards or regulations respecting noise, and, "on the basis of regular consultation," compile and publish reports "on the status and progress of Federal activities relating to noise research and noise control." 42 U.S.C. § 4903(c).

86.     In 1975, EPA issued the first comprehensive report on the status and progress of Federal noise control activities.

87.     In 1980, EPA reported that it had "planned and organized a four-part program to integrate Federal agency noise abatement policies and programs into a national noise strategy."

88.     By 1980, EPA had commented upon the policies and regulations of several Federal agencies regarding those agencies' noise regulations.

89.     A report published by EPA in 1980, detailing the Agency's Noise Control Act accomplishments "to date," stated that EPA had also "taken actions" to ensure Federal agency compliance with Federal, State, and local noise control requirements.

90.     EPA discontinued these efforts in 1982.

91.     For forty years, EPA has not coordinated interagency efforts on noise control, nor has it compiled or published any reports on the status and progress of Federal activities relating to noise.

## Excessive Noise Exposure and Human Health

92.     Exposure to excessive noise harms hearing.

93.     Estimates indicate that 104 million Americans are at risk for noise-induced hearing loss due to average noise exposure above 70 dBA.

94.     In addition to harming hearing health, excessive noise causes and contributes to increased sleep disruption, cardiovascular disease, cerebrovascular disease, metabolic disturbances, exacerbation of psychological disorders, and premature mortality.

95.     Estimates indicate that at least 145 million Americans are at risk for hypertension due to average noise exposure above 55 dBA.

96.     Excessive exposure to noise disproportionately affects vulnerable populations, including low-income areas, communities of color, children, pregnant women, the elderly, the chronically ill, night shift workers, and military personnel.

97.     Excessive noise also harms wildlife and ecosystems.

98.    Researchers in the United States estimate that the harmful effects of noise cost billions of dollars each year.

99.    In 1981, EPA estimated that the health of approximately 50% of the American population was at risk from exposure to levels of noise above EPA's 1974 recommended level.

100.    In 2013, academic researchers estimated that 50% of the American population is still at risk for exposure to noise above EPA's 1974 recommended level.

101.    Since abandoning its duties under the Noise Control Act in 1982, EPA has made no progress in protecting the American people from the many harmful effects of noise pollution.

**Disparate Impacts of Noise Pollution on Environmental Justice Communities**

102.    EPA combines environmental and demographic socioeconomic indicators to identify communities that are disproportionately impacted by pollution and environmental hazards, referred to here as environmental justice ("EJ") communities.

103.    Some Quiet Communities' members live in EJ communities that experience disproportionate harm from noise pollution.

104.    National and local studies show that noise, ranging from road, rail, and air traffic to construction and industrial sources, disparately impacts low-income, marginalized, and EJ communities, predisposing community members to poorer health and learning outcomes.

105.    To bring these noise-related environmental injustices to the attention of EPA and others, Quiet Communities addressed EPA's National Environmental Justice Advisory Council and White House Environmental Justice Advisory Council regarding the hazards of noise and its disproportionate impacts on EJ communities. In particular, Quiet Communities emphasized the importance of including noise as an environmental indicator in EJScreen 2.0 and in other environmental and health impact assessment tools.

14

106.    EPA failed to include noise as a criterion in EJScreen 2.0 or in any other impact assessment tool.

## ALLEGATIONS OF INJURY

107.    Plaintiffs and Quiet Communities' members are harmed, and will continue to be harmed, by EPA's failure to take the actions required by the Noise Control Act.

108.    EPA's violations of the Noise Control Act have injured and continue to injure the health, recreational, educational, environmental, economic, property, commercial, informational, procedural, and/or other interests of Plaintiffs and Quiet Communities' members.

109.    Plaintiffs and Quiet Communities' members live, work, attend school or educational programs, and engage in other indoor and outdoor activities impeded by noise pollution.

110.    Kempthorne and some of Quiet Communities' members suffer from medical harms associated with exposure to excessive noise.

111.    Kempthorne and Quiet Communities' members are concerned that excessive exposure to noise in their communities increases their risk of physical and mental health harms associated with noise pollution.

112.    Kempthorne and Quiet Communities' members' ability to enjoy their property has been and continues to be diminished because of noise pollution.

113.    Some of Quiet Communities' members have expended and continue to expend resources attempting to mitigate harm from noise exposure in their homes.

114.    Kempthorne and some of Quiet Communities' members who work from home have experienced and continue to experience economic harm from lost productivity due to excessive exposure to noise in their homes.

115.    In some cases, the children of Quiet Communities' members experience learning disruption due to noise exposure while studying or attending school from home.

116.    Kempthorne and some of Quiet Communities' members have been harmed by and experience ongoing harm from dangerous levels of noise emitted from unregulated and unlabeled products.

117.    Because of EPA's prolonged inaction, Plaintiffs and Quiet Communities' members spend their own time and money documenting noise exposures, educating their communities on the harms of noise, and advocating for noise control.

118.    Because of EPA's prolonged inaction, Plaintiffs and Quiet Communities' members are denied information and the underlying evidence that would be publicly available if EPA had fulfilled its nondiscretionary duties to report on noise criteria, safe levels of noise, major sources of noise, noise control technology, and the status and progress of all Federal activities relating to noise research and noise control.

119.    The lack of this information impairs Quiet Communities' ability to provide information and services to its members and to assist them in protecting their interests; hampers the ability of Plaintiffs and Quiet Communities' members to take actions to protect their health and communities; and diminishes Plaintiffs' and Quiet Communities' members' enjoyment of activities in their daily lives.

120.    Quiet Communities' ability to advocate for its members, to educate and persuade local governments to take action, and to educate and persuade noise generators to adopt alternative, less noisy practices has been and continues to be impeded by EPA's non-performance of its mandated duties.

121.    If EPA had complied with the Noise Control Act, Quiet Communities would be able to spend more of its resources working toward reasonable solutions and fewer resources educating people on the basic premise that noise is a serious public health issue, not just a nuisance.

122.    EPA's ongoing failure to fulfill its responsibilities under the Noise Control Act prolongs and increases Plaintiffs' and Quiet Communities' members' exposure to injurious noise pollution and the resulting health, recreational, informational, economic, procedural, and other injuries, as described above.

123.    The failures complained of herein cause Plaintiffs' and Quiet Communities' members' injuries for which they have no adequate remedy at law. A court order requiring EPA to comply with its statutory obligations under the Noise Control Act would redress these injuries.

## CLAIMS FOR RELIEF

### First Claim for Relief:
### Failure to Perform Nondiscretionary Duties Under Sections 5(a)(1) and 5(c) of the Noise Control Act, 42 U.S.C. §§ 4904(a)(1), (c)

124.    Plaintiffs reallege paragraphs 1 through 123 and incorporate the allegations set forth in those paragraphs by reference as though set out in full.

125.    Section 5(a)(1) of the Noise Control Act provides that EPA "shall . . . develop and publish criteria with respect to noise" and that such criteria "shall reflect the scientific knowledge most useful in indicating the kind and extent of all identifiable effects on the public health or welfare which may be expected from differing quantities and qualities of noise."

126.    Section 5(c) provides EPA "shall" "from time to time" review and revise or supplement the reports required by Section 5.

127.    EPA has not revised or supplemented the Criteria Document since 1973.

17

128.    EPA's failure to revise or supplement the report required in Section 5(a)(1) for the past fifty years constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 4911(a)(2)(A).

129.    Each day the Administrator fails to take these legally required actions, Defendants commit new, additional, and ongoing violations of Section 5(c).

130.    Based upon the foregoing and 42 U.S.C. § 4911(a), Plaintiffs are entitled to declaratory and injunctive relief requiring EPA to comply with its statutory obligations and promptly prepare and publish a revised Criteria Document to reflect the current state of scientific knowledge.

### Second Claim for Relief:
### Failure to Perform Nondiscretionary Duties Under Sections 5(a)(2) and 5(c) of the Noise Control Act, 42 U.S.C. §§ 4904(a)(2), (c)

131.    Plaintiffs reallege paragraphs 1 through 130 and incorporate the allegations set forth in those paragraphs by reference as though set out in full.

132.    Section 5(a)(2) of the Noise Control Act provides that EPA "shall publish information on the levels of environmental noise the attainment and maintenance of which in defined areas under various conditions are requisite to protect the public health and welfare with an adequate margin of safety."

133.    Section 5(c) provides EPA "shall" "from time to time" review and revise or supplement the reports required by Section 5.

134.    EPA has not revised or supplemented the Levels Document since 1974.

135.    EPA's failure to revise or supplement the report required in Section 5(a)(2) for the past forty-nine years constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 4911(a)(2)(A).

136.    Each day the Administrator fails to take these legally required actions, Defendants

commit new, additional, and ongoing violations of Section 5(c).

137.    Based upon the foregoing and 42 U.S.C. § 4911(a), Plaintiffs are entitled to

declaratory and injunctive relief requiring EPA to comply with its statutory obligations and

promptly prepare and publish a revised Levels Document to reflect the current state of scientific

knowledge.

**Third Claim for Relief:**
**Failure to Perform Nondiscretionary Duties Under Sections 5(b) and 5(c) of the Noise**
**Control Act, 42 U.S.C. §§ 4904(b), (c)**

138.    Plaintiffs reallege paragraphs 1 through 137 and incorporate the allegations set

forth in those paragraphs by reference as though set out in full.

139.    Section 5(b) of the Noise Control Act provides that EPA "shall . . . compile and

publish a report or series of reports (1) identifying products (or classes of products) which in [its]

judgment are major sources of noise, and (2) giving information on techniques for control of

noise from such products, including available data on the technology, costs, and alternative

methods of noise control."

140.    Section 5(c) provides EPA "shall" "from time to time" review and revise or

supplement the reports required by Section 5.

141.    EPA has failed to identify new major sources of noise since 1977.

142.    EPA has not revised or supplemented reports for products identified as major

sources of noise in the 1970s.

143.    EPA's failure to revise or supplement the identification reports required in

Section 5(b) for the past forty-six years constitutes a failure to perform acts or duties that are not

discretionary with the Administrator within the meaning of 42 U.S.C. § 4911(a)(2)(A).

144.    Each day the Administrator fails to take these legally required actions, Defendants

commit new, additional, and ongoing violations of Sections 5(b) and 5(c).

145.    Based upon the foregoing and 42 U.S.C. § 4911(a), Plaintiffs are entitled to

declaratory and injunctive relief requiring EPA to comply with its statutory obligations and

promptly review, revise, and supplement reports identifying products that are major sources of

noise and to give information on the available techniques and technology to control such

products' noise emissions.

**Fourth Claim for Relief:**
**Failure to Perform Nondiscretionary Duties Under Section 6 of the Noise Control Act, 42**
**U.S.C. § 4905**

146.    Plaintiffs reallege paragraphs 1 through 145 and incorporate the allegations set

forth in those paragraphs by reference as though set out in full.

147.    Section 6 of the Act requires EPA to publish proposed regulations for products

identified as major sources of noise under Section 5 within eighteen months of their

identification. These regulations "shall" include noise emission standards and limits on noise

emissions "requisite to protect the public health and welfare."

148.    In 1975, EPA identified truck transport refrigeration units as a major source of

noise. 40 Fed. Reg. 23105 (May 28, 1975).

149.    In 1977, EPA identified power lawn mowers, pavement breakers, and rock drills

as major sources of noise. 42 Fed. Reg. 2525 (Jan. 12, 1977); 42 Fed. Reg. 6722 (Feb. 3, 1977).

150.    EPA has neither proposed regulations nor finally withdrawn the identification

reports for these four identified major sources of noise.

151.    EPA has missed the eighteen-month deadline to propose regulations for these four

major sources of noise as required by Section 6(a)(2)(B) by over forty-four years.

152.     EPA's failure to propose regulations for truck transport refrigeration units, power lawn mowers, pavement breakers, and rock drills constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 4911(a)(2)(A).

153.     Each day the Administrator fails to take these legally required actions, Defendants commit new, additional, and ongoing violations of Section 6.

154.     EPA's failure to conduct the overdue rulemaking for identified major sources of noise as required by Section 6 deprives Plaintiffs and Quiet Communities' members of the opportunity to participate in the rulemaking and offer comments to EPA that could result in greater health protections and emissions reductions.

155.     This deprivation of the opportunity to present comments through rulemaking and to have them addressed by EPA impairs the ability of Plaintiffs and Quiet Communities' members to serve and protect their interests, and for Quiet Communities to fulfill its organizational mission.

156.     Based upon the foregoing and 42 U.S.C. § 4911(a), Plaintiffs are entitled to declaratory and injunctive relief requiring EPA to comply with its statutory obligations and promptly prepare and publish proposed regulations under 42 U.S.C. §§ 4905(a)(1) and 4905(a)(2)(B) for truck transport refrigeration units, power lawn mowers, pavement breakers, and rock drills.

## Fifth Claim for Relief:
## Failure to Perform Nondiscretionary Duties Under Section 15 of the Noise Control Act, 42 U.S.C. § 4914

157.     Plaintiffs reallege paragraphs 1 through 156 and incorporate the allegations set forth in those paragraphs by reference as though set out in full.

158.    Section 15 of the Noise Control Act assigns EPA responsibility for developing low-noise-emission products ("LNEPs").

159.    Under Section 15, the "Administrator shall determine which products qualify as [LNEPs]," and the Federal Government "shall" acquire certified LNEPs for "use by the Federal Government in lieu of other products."

160.    EPA has not been administering LNEP purchases by the Federal Government since 1982, if ever.

161.    EPA's failure to define LNEP levels for major sources of noise and certify LNEPs constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 4911(a)(2)(A).

162.    Each day the Administrator fails to take these legally required actions, Defendants commit new, additional, and ongoing violations of Section 15.

163.    Based upon the foregoing and 42 U.S.C. § 4911(a), Plaintiffs are entitled to declaratory and injunctive relief requiring EPA to comply with its statutory obligations and administer the LNEP certification process under Section 15.

**Sixth Claim for Relief:**
**Failure to Perform Nondiscretionary Duties Under Section 8 of the Noise Control Act, 42 U.S.C. § 4907**

164.    Plaintiffs reallege paragraphs 1 through 163 and incorporate the allegations set forth in those paragraphs by reference as though set out in full.

165.    Section 8 of the Noise Control Act mandates that EPA "shall by regulation designate any product (or class thereof)—(1) which emits noise capable of adversely affecting the public health or welfare; or (2) which is sold wholly or in part on the basis of its effectiveness in reducing noise."

166.    For each product designated under Section 8, EPA "shall by regulation require that notice be given to the prospective user of the level of the noise the product emits, or of its effectiveness in reducing noise" through labeling requirements.

167.    It has been more than forty years since EPA finalized any rulemaking for product labeling under Section 8.

168.    EPA's failure to designate and adopt or revise labeling regulations for products that emit noise capable of adversely affecting the public health or welfare or sold because of their effectiveness in reducing noise constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 4911(a)(2)(A).

169.    Each day the Administrator fails to take these legally required actions, Defendants commit new, additional, and ongoing violations of Section 8.

170.    Based upon the foregoing and 42 U.S.C. § 4911(a), Plaintiffs are entitled to declaratory and injunctive relief requiring EPA to comply with its statutory obligations and designate and adopt labeling regulations for any product that "emits noise capable of adversely affecting the public health or welfare."

171.    Plaintiffs are also entitled to an order requiring EPA to amend its labeling regulations for hearing protection devices to reflect the current state of scientific knowledge.

**Seventh Claim for Relief:**
**Failure to Perform Nondiscretionary Duties Under Section 14 of the Noise Control Act, 42 U.S.C. § 4913**

172.    Plaintiffs reallege paragraphs 1 through 171 and incorporate the allegations set forth in those paragraphs by reference as though set out in full.

173.    Section 14 of the Noise Control Act provides that EPA "shall," among other duties, (a) "develop and disseminate information and educational materials to all segments of the

public on the public health and other effects of noise and the most effective means for noise control"; (b) "conduct or finance research . . . on the effects, measurement, and control of noise"; (c) "administer a nationwide Quiet Communities Program" that supports State and local noise control programs in a variety of ways, including through grants, purchases of equipment, development and implementation of equipment monitoring procedures, studies and demonstrations to determine State and local needs, and development of education and training materials; (d) "develop and implement a national noise environmental assessment program"; (e) "establish regional technical assistance centers"; and (f) "provide technical assistance to State and local governments to facilitate their development and enforcement of noise control."

174.    EPA has carried out none of the duties required by Section 14 since 1982.

175.    EPA's failure to carry out any of the mandates of Section 14 for over forty years constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 4911(a)(2)(A).

176.    Plaintiffs and Quiet Communities' members are deprived of the quieter communities, information, regional technical assistance centers, funding, and other Federal support that would result from EPA's development of effective State and local noise control programs "through the use of grants, contracts, and direct Federal actions," as mandated by Section 14 of the Noise Control Act. EPA's inaction prolongs and increases Plaintiffs' and Quiet Communities' members' exposure to higher levels of harmful noise pollution that harms Plaintiffs' and Quiet Communities' members' health, recreational, and other interests.

177.    Each day the Administrator fails to take these legally required actions, Defendants commit new, additional, and ongoing violations of Section 14.

178.    Based upon the foregoing and 42 U.S.C. § 4911(a), Plaintiffs are entitled to declaratory and injunctive relief requiring EPA to comply with its statutory obligations and carry out the duties mandated by the Quiet Communities Act.

**Eighth Claim for Relief:**
**Failure to Perform Nondiscretionary Duties Under Section 4 of the Noise Control Act, 42**
**U.S.C. § 4903**

179.    Plaintiffs reallege paragraphs 1 through 178 and incorporate the allegations set forth in those paragraphs by reference as though set out in full.

180.    Section 4 of the Noise Control Act directs all Federal agencies to "carry out the programs within their control in such a manner as to further the policy declared in [the Act.]" EPA is specifically directed in Section 4(c) to "coordinate the programs of all Federal agencies relating to noise research and noise control" and to consult with agencies on "prescribing standards or regulations respecting noise."

181.    Per Section 4(c)(3), EPA "shall compile and publish, from time to time, a report on the status and progress of Federal activities relating to noise research and noise control" on the basis of "regular consultation."

182.    EPA stopped efforts to comply with Section 4 in 1982.

183.    EPA's failure to coordinate an interagency effort on noise control, consult with other Federal agencies on their noise control activities, and compile and publish a report on the status and progress of those activities for over forty years constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 4911(a)(2)(A).

184.    Each day the Administrator fails to take these legally required actions, Defendants commit new, additional, and ongoing violations of Section 4.

185.    Based upon the foregoing and 42 U.S.C. § 4911(a), Plaintiffs are entitled to declaratory and injunctive relief requiring EPA to comply with its statutory obligations and carry out the duties mandated by Section 4.

**Ninth Claim for Relief:**
**Agency Action Unlawfully Withheld or Unreasonably Delayed Under the Administrative Procedure Act, 5 U.S.C. § 706(1)**

186.    Plaintiffs reallege paragraphs 1 through 185 and incorporate the allegations set forth in those paragraphs by reference as though set out in full.

187.    Under the Administrative Procedure Act ("APA"), a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

188.    EPA's failure to comply with the Noise Control Act's nondiscretionary commands for over forty years, as alleged in counts 1 through 8, constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of 5 U.S.C. § 706(1).

189.    Any person suffering legal wrong, adversely affected, or aggrieved by agency action may seek judicial review of such agency action. 5 U.S.C. § 702.

190.    Plaintiffs plead violation of the APA in the alternative for counts 1 through 8.

191.    Defendants' unreasonably delayed and unlawfully withheld actions have harmed, and will continue to harm, Plaintiffs and Quiet Communities' members.

192.    Plaintiffs are entitled to declaratory and injunctive relief requiring EPA to comply with its statutory obligations and promptly carry out each of the duties described in counts 1 through 8.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

A. Declare that Defendants' failure to perform each of the duties described above and required by Sections 5(a)(1), 5(a)(2), 5(b), 5(c), 6(a), 6(c), 15, 8, 14, and 4 of the Noise Control Act constitutes a failure to perform acts or duties that are not discretionary with Defendants within the meaning of the Noise Control Act, § 4911(a)(2)(A), or, in the alternative, that each constitutes agency action unreasonably delayed or unlawfully withheld within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(1).

B. Issue a mandatory injunction ordering Defendants to promptly carry out each of the duties described above and required by Sections 5(a)(1), 5(a)(2), 5(b), 5(c), 6(a), 6(c), 15, 8, 14, and 4 of the Noise Control Act, 42 U.S.C. §§ 4904(a), (b), (c); 4905(a), (c); 4914; 4907; 4913; and 4903.

C. An award of Plaintiffs' costs and attorneys' fees pursuant to 42 U.S.C. § 4911(d); and

D. Such further relief as the Court deems just and equitable.

Dated: June 7, 2023.                    Respectfully submitted,

/s/ Jeffrey M. Feldman
Jeffrey M. Feldman (D.C. Bar No. WA0032)
Summit Law Group
315 Fifth Avenue S, Suite 1000
Seattle, WA 98104-2682
Tel: (206) 676-7000
jefff@summitlaw.com

/s/ Sanne Knudsen
Sanne Knudsen (*pro hac vice* motion pending)
WSBA Bar No. 52654
Regulatory Environmental Law & Policy Clinic
University of Washington School of Law
4293 Memorial Way NE
Seattle, WA 98195-0001
Tel: (206) 221-7443
sknudsen@uw.edu

/s/ Erica Proulx
Erica Proulx (*pro hac vice* motion pending)
WSBA Bar No. 60155
Regulatory Environmental Law & Policy Clinic
William H. Gates Hall, Suite 211
University of Washington School of Law
4293 Memorial Way NE
Seattle, WA 98195-0001
Tel: (206) 616-7329
uwdiehlfellow@uw.edu

*Attorneys for Plaintiffs*