# EXHIBIT 3

Congressional Research Service
Informing the legislative debate since 1914

# Transfer and Reprogramming of Appropriations: An Overview

June 20, 2023

**Congressional Research Service**
https://crsreports.congress.gov
R47600

Congressional Research Service
Informing the legislative debate since 1914

# Transfer and Reprogramming of Appropriations: An Overview

R47600

June 20, 2023

**Taylor N. Riccard**
Analyst in Government Organization and Management

**Dominick A. Fiorentino**
Analyst in Government Organization and Management

## SUMMARY

Congress has recognized a need to permit agencies some flexibility during budget execution after the enactment of appropriations, and it has provided agencies with limited authority to make spending adjustments. Congress has established multiple statutory and informal practices to engage with and monitor agencies in many of these activities.

Congress typically appropriates funds in the form of an *account*, which covers one or more specific purposes. Funding for each agency or department is organized in one or more accounts, each of which may include one or more related *programs, projects or activities* (PPAs). Agencies may exercise discretion to reallocate appropriated funds within or among accounts as well as within or among PPAs. Agency funding reallocations fall within the following three categories:

1. **Use of discretion within a particular account without advance congressional notification:** An agency may consider reallocating funds within a particular PPA in a given budget account among allowable purposes (as authorized by law) and objects (e.g., salaries, rent, programmatic expenses).
2. **Reallocating funds within an account:** *Reprogramming* is the shifting of funds within an appropriations account to "use them for purposes other than those contemplated at the time of appropriation; it is the shifting of funds from one object class to another within an appropriation or from one program activity to another." The reprogramming of funds is generally permitted unless it is restricted by statute. Statutory provisions may also prohibit reprogramming funds without advance congressional notification.
3. **Moving funds from one account to another:** *Transfers*—that is, the shifting of budgetary resources from one appropriations or fund account to another—typically involve movement of funds between accounts either within an agency or across agency boundaries. Transfers are prohibited unless an agency has specific statutory authorization to do so. This prohibition prevents agencies from transferring funds from one account to another in ways that may be inconsistent with the purposes for which Congress originally provided the funding.

Appropriations or authorizing statutes that provide agencies with transfer authority often include restrictions on that authority. Congress may also place limits on the amount of funds that an agency may reprogram. In addition, statutes may restrict the use of transferred or reprogrammed funds to specific purposes. Agencies are often required to notify the House and Senate Appropriations Committees a certain number of days prior to (or shortly after) carrying out transfers and reprogramming.

Agencies generally have internal procedures for determining when and how a transfer or reprogramming of funds will take place. Departments, their component bureaus, and other agencies may be required to obtain approval from the head of the agency, from the department secretary (e.g., if the transfer or reprogramming were to take place across multiple components of a department), and, in some cases, from the director of the Office of Management and Budget (OMB) prior to transferring or reprogramming funds. Executive branch agencies are also subject to guidance and procedures established by OMB.

Congress may consider how to balance congressional prerogatives and control with agency flexibility. In addition, transfers and reprogramming of appropriated funds may have ramifications for congressional oversight of agency execution of enacted appropriations throughout the fiscal year. Congress may consider the following issues related to the agency use of transfer and reprogramming authorities: (1) agency reporting and congressional oversight of reprogramming and transfers, (2) the potential burden of transfer and reprogramming notifications on Congress, (3) excessive or improper use of transfer or reprogramming authorities by agencies, and (4) the financial management and budgetary treatment of transferred funds.

# Contents

Introduction ... 1
Transfers and Reprogramming in Context ... 1
Use of Obligation Discretion ... 3
Reprogramming: Reallocating Funds Within an Account ... 4
Restrictions on Reprogramming Without Advance Notification ... 5
Nonstatutory Understandings: Reprogramming and Funding Allocation Guidance Within Report Language ... 5
Transfers: Moving Funds from One Account to Another ... 6
Transfer Authority in Annual Appropriations Acts ... 7
Department-Wide and Agency-Wide Transfer Authority ... 8
Account-Specific Transfer Authority ... 8
Transfer Authority in Authorizing Statutes ... 9
Transfer Authority for Governmental Reorganization ... 9
Transfer Authority for Inter- and Intra-Agency Coordination of Activities and Functions ... 10
Restrictions on Reprogramming and Transfers ... 10
Amount: *Not-to-Exceed* Provisions ... 10
Amount: *No-Less-Than* Provisions ... 11
Purpose: Restrictions on the Use of Reprogrammed or Transferred Funds ... 12
Timing: Prohibition Against "Parking" or "Banking" Transferred Funds ... 13
Congressional Notification ... 14
Treasury Reporting of Transfers ... 15
Agency Procedures and the Role of the Office of Management and Budget (OMB) ... 16
Potential Issues for Congress ... 17
Agency Reporting and Congressional Oversight of Reprogramming and Transfers ... 17
Potential Burden of Transfer and Reprogramming Notifications ... 18
Excessive or Improper Use of Transfer or Reprogramming Authorities ... 18
Financial Management and Budgetary Treatment of Transferred Funds ... 19

## Figures

Figure 1. Example of Transfers, Reprogramming, and Other Forms of Budgetary Discretion Within and Among Agencies ... 3

## Appendixes

Appendix. Selected Examples of Transfer Authority in Authorizing Statutes ... 20

## Contacts

Author Information ... 28

# Introduction

Congress has recognized a need to permit agencies some flexibility after enactment of appropriations, when agencies engage in budget execution. Accordingly, Congress often provides agencies with limited authorities to make spending adjustments. For example, Congress may provide agencies with limited authority to reallocate funds between separately appropriated amounts (usually called *transfers*)—either within an agency or across agencies. In addition, Congress may establish a framework for transparency in how funds may be reallocated within an appropriated amount, such as from one program, project, or activity to another (referred to as *reprogramming*). In many of these reallocation situations, agencies are required to notify the House and Senate Appropriations Committees in advance, which may provide an opportunity for the committees to learn more and attempt to exert influence over how agencies use discretion.

The U.S. Constitution vests Congress with the *power of the purse*, and funds may be drawn from the Treasury only in consequence of appropriations made by law.[1] Enacted appropriations—whether they come through annual appropriations acts, occasional supplemental appropriations measures, or permanent appropriations—often vary in the level of detail they provide regarding how agencies may spend funds.[2] In this way, Congress may influence the provision and allocation of budgetary resources to help ensure agencies' actions align with congressional intent.[3]

This report provides an overview of transfers and reprogramming processes as they apply broadly to agencies, including statutory restrictions and any requirements for congressional notification that are applicable to each. The report discusses reporting requirements associated with transfers and reprogramming, as well as the roles of agencies and the Office of Management and Budget (OMB). It concludes with a brief discussion of the following possible issues for Congress: (1) agency reporting and congressional oversight of transfers and reprogramming actions, (2) the potential burden of transfer and reprogramming notifications, (3) excessive or improper use of transfer and reprogramming authorities, and (4) financial management and budgetary treatment of transferred funds.

# Transfers and Reprogramming in Context

Many transfer and reprogramming situations occur in the context of annual and supplemental appropriations acts.[4] When Congress provides funding in regular appropriations acts, for example, most grants of budget authority are provided by so-called *lump-sum appropriations*. Each lump-sum appropriation typically covers one or more specific purposes and related programs, projects, or items.[5] Within regular appropriations acts, each lump sum takes the form of

---

[1] U.S. Const, art. I, §9.

[2] For discussion, see CRS Report R46468, *A Brief Overview of the Congressional Budget Process*, by James V. Saturno.

[3] For discussion, see CRS Report R46417, *Congress's Power Over Appropriations: Constitutional and Statutory Provisions*, by Sean M. Stiff.

[4] Funding provided in annual appropriations acts is referred to as discretionary spending. Transfer and reprogramming authorities may also exist in permanent statutes governing mandatory spending.

[5] U.S. Government Accountability Office (GAO), "Chapter 6, Availability of Appropriations: Amount," in *Principles of Federal Appropriations Law*, 3rd ed., vol. II, GAO-06-382SP, February 2006, p. 6-5, https://www.gao.gov/assets/210/202819.pdf#page=19.

an unnumbered paragraph, which during budget execution corresponds to an *account.*[6] Funding for each department and independent agency is organized in one or more accounts. Each account may generally include one or more related *programs, projects, or activities* (PPAs), which are typically specified in congressional documents.[7]

This statutory text establishes key context for how transfers and reprogramming may occur. After enactment of a particular appropriation into law, agencies may obligate and expend funds, subject to several conditions addressed by appropriations statutes.[8] These conditions on the availability of appropriations include

- the *purpose(s)* for which particular funds are appropriated, which may be expressed in statute in more or less detail and, in some cases, with certain restrictions;[9]
- the *time period* during which funds are available for obligation and expenditure—sometimes referred to as the *period of availability* or *duration* of appropriations;[10] and
- the *amount* of appropriated funds that may be obligated and expended.[11]

Within the contours of these statutory conditions on availability of funds, agencies may attempt to exercise some discretion in how funds are allocated and the pace at which funds are obligated and spent. During budget execution, agencies may also face cost changes or re-prioritization of their missions due to external events (e.g., a military conflict, natural disaster, or recession) or decisions by an agency or the current Administration.[12] To account for such events, including circumstances unforeseen by Congress, agencies have been granted some discretion to reallocate their budget authority. Congress has established multiple statutory and informal practices to engage with and monitor agencies in many of these activities.

Transfer and reprogramming authorities provide guidelines by which agencies can exercise some of this discretion. **Figure 1** provides an example of how an agency, or several agencies, can allocate and reallocate funds. Moving from the top of the figure to the bottom, the types of discretion depicted are as follows:

---

[6] Unlike most authorizing legislation, regular appropriations legislation is drafted as unnumbered paragraphs that provide a lump-sum amount for each appropriations account.

[7] The House and Senate Committees on Appropriations may specify PPAs in report language to provide more detailed expectations or directions to agencies on the allocation of funding among various activities funded within their accounts. The term *report language* refers to information provided in reports accompanying committee-reported legislation as well as joint explanatory statements included in conference reports. Specifically, a report may include tables that break down each lump-sum appropriation into smaller sub-allocations for distinct PPAs. Appropriators may use these tables to establish expectations for agencies' allocations of funds. Oftentimes, the report language reacts to what agencies provided to the Appropriations Committees in their budget justification documents.

[8] Authorizing statutes may also prescribe how funds can be spent, especially with respect to the funding purpose.

[9] For discussion, see GAO, "Chapter 3, Availability of Appropriations: Purpose," in *Principles of Federal Appropriations Law*, 4th ed., 2017 Revision, GAO-17-797SP, 2017, https://www.gao.gov/assets/690/687162.pdf. Some appropriations paragraphs refer to separate authorizing statutes as defining purposes for which appropriations are provided.

[10] For discussion, see GAO, "Chapter 5, Availability of Appropriations: Time," in *Principles of Federal Appropriations Law*, 3rd ed., vol. I, GAO-04-261SP, January 2004, p. 5-3, https://www.gao.gov/assets/210/202437.pdf#page=558.

[11] For discussion, see GAO, "Chapter 6, Availability of Appropriations: Amount."

[12] See CRS Report R47333, *Reporting on Agency Budget Execution: Processes and Case Study Illustration*, by Dominick A. Fiorentino.

- **Intra-agency transfer (purple arrow):** Congress may grant *Agency X* the authority to move funds from appropriations *Account 1* to appropriations *Account 2* within the agency.
- **Inter-agency transfer (blue arrow):** Congress may grant *Agency X* the authority to move funds from appropriations *Account 2* to appropriations *Account 1* in *Agency Y*.
- **Reprogramming (green arrow):** *Agency X*, absent any statutory restrictions from Congress, may reallocate funds from *PPA a* to *PPA b* within appropriations *Account 1*.
- **Agency discretion to obligate within PPA (orange arrow):** *Agency X* may allocate funds among *Allocation i* and *Allocation ii* within *PPA a* in order to best support the purpose of *PPA a* and *Account 1*.

**Figure 1. Example of Transfers, Reprogramming, and Other Forms of Budgetary Discretion Within and Among Agencies**




**Source:** CRS.

**Notes:** This figure provides an illustrative example and is not meant to depict any particular agency or appropriations account. Additionally, transfer authorities may not be account-specific and may be agency-wide.

# Use of Obligation Discretion

Under lump-sum budgeting, Congress will usually provide for some level of agency discretion in obligating budget authority. Section 1301(a) of Title 31 of the *U.S. Code*, which is often referred to as the *purpose statute*, guides that authority. It provides that "[a]ppropriations shall be applied

only to the objects for which the appropriations were made except as otherwise provided by law."[13]

The Government Accountability Office (GAO) has discussed the purpose statute in light of the *necessary expense rule*. Under this framework, an appropriation of funds for a particular object or purpose confers authority to an agency to incur expenses that are necessary or proper or incident to the proper execution of the object or purpose.[14] In other words, an agency may have some flexibility to use appropriated funds to pay for things that are not expressly named as a purpose but are necessary to accomplish a stated purpose. In general, however, an agency may not use discretion to make an expenditure that is otherwise provided for in another, separate appropriation.[15] Thus, an agency may, unless otherwise prohibited or directed by law, exercise some discretion in how to allocate and reallocate funding among certain organizational subunits, objects (e.g., salaries, rent, contracts), and policy priorities within the contours of the agency's statutory authorities and obligations.

At the same time, an agency may face practical constraints in how it may use discretion to (1) reallocate funds across PPA or account boundaries and (2) create, eliminate, or reorganize its programs, projects, and organizational subunits. For example, an agency may consider whether to reallocate funds in a way that would constitute a reprogramming requiring advance notice or a transfer. A reprogramming may involve reallocating funds (1) from one PPA to another, (2) to create a new PPA, or (3) to eliminate an existing PPA. A transfer involves reallocating funds from one account to another.

# Reprogramming: Reallocating Funds Within an Account

Reprogramming is the shifting of funds within an appropriations account to "use them for purposes other than those contemplated at the time of appropriation; it is the shifting of funds from one object class to another within an appropriation or from one program activity to another."[16] The reprogramming of funds is generally permitted unless it is restricted by statute.[17]

---

[13] 31 U.S.C. §1301(a).

[14] According to GAO, "The Comptroller General has never established a precise formula for determining the application of the necessary expense rule. In view of the vast differences among agencies, any such formula would almost certainly be unworkable. Rather, the determination must be made essentially on a case-by-case basis." GAO employs a three-step analysis in applying the rule: (1) "The expenditure must bear a logical relationship to the appropriation sought to be charged. In other words, it must make a direct contribution to carrying out either a specific appropriation or an authorized agency function for which more general appropriations are available"; (2) "The expenditure must not be prohibited by law"; and (3) "The expenditure must not be otherwise provided for, that is, it must not be an item that falls within the scope of some other appropriation or statutory funding scheme." See GAO, "Chapter 3, Availability of Appropriations: Purpose."

[15] See GAO, "Chapter 3, Availability of Appropriations: Purpose," p. 3-407.

[16] GAO, *A Glossary of Terms Used in the Federal Budget Process*, p. 85, GAO-05-734SP, September 2005, https://www.gao.gov/assets/gao-05-734sp.pdf. According to OMB, object classes are "categories in a classification system that presents obligations by the items or services purchased by the Federal Government," such as personnel compensation, acquisition of assets, and grants. See OMB, *Circular No. A-11*, §83. The Department of Defense uses the term *reprogramming* to encompass both transfers and reprogramming actions. See Under Secretary of Defense (Comptroller), "Budget Execution," https://comptroller.defense.gov/Budget-Execution/ReprogrammingFY2021/. For further discussion of Defense transfer and reprogramming authorities, see CRS Report R46421, *DOD Transfer and Reprogramming Authorities: Background, Status, and Issues for Congress*, by Brendan W. McGarry.

[17] GAO, *Principles of Federal Appropriations Law*, 3rd ed., vol. I, p. 98.

Statutory provisions may also prohibit reprogramming funds without advance congressional notification. Prior congressional notification might be required for reprogrammings that

- shift funds among PPAs above a threshold level,
- create or eliminate a program,
- relocate or reorganize offices and employees, or
- contract out certain functions or activities.

Notification provisions establish a venue where appropriations or other committees may seek to influence reprogrammings prior to agency action. According to the GAO, reprogramming "is implicit in an agency's responsibility to manage its funds."[18] Nevertheless, an agency's ability to reprogram may be restricted by provisions within its annual appropriations acts or other statutes.

## Restrictions on Reprogramming Without Advance Notification

Though agencies are typically allowed to reprogram funds, there are cases in which this ability is restricted. An agency's ability to reprogram may be restricted by provisions within its annual appropriations acts or other statutes. These provisions typically have the effect of requiring agencies to provide advance notification to certain congressional committees.

**Example of Provisions Restricting Reprogramming**

Provisions in the Consolidated Appropriations Act, 2023, established the following restrictions and notification requirements on reprogramming actions by the Department of Homeland Security:[19]

> (a) None of the funds provided by this act … shall be available for obligation or expenditure through a reprogramming of funds that:
>
> (1) creates or eliminates a program, project, or activity, or increases funds for any program, project, or activity for which funds have been denied or restricted by the Congress; (2) contracts out any function or activity presently performed by Federal employees or any new function or activity proposed to be performed by Federal employees in the President's budget proposal for FY2023 for the Department of Homeland Security; (3) augments funding for existing programs, projects, or activities in excess of $5,000,000 or 10%, whichever is less; (4) reduces funding for any program, project, or activity, or numbers of personnel, by 10% or more; or (5) results from any general savings from a reduction in personnel that would result in a change in funding levels for programs, projects, or activities as approved by the Congress.
>
> (b) Subsection (a) shall not apply if the Committees on Appropriations of the Senate and the House of Representatives are notified at least 15 days in advance of such reprogramming.

## Nonstatutory Understandings: Reprogramming and Funding Allocation Guidance Within Report Language

Within the contours of statutory appropriations text, an agency will sub-allocate portions of an account's budget authority among component organizations and programs. Each account may generally include one or more related PPAs, which are typically specified in agency budget justifications and congressional documents as tables of information. The ways in which agencies do this sub-allocation vary. In addition, the categories of sub-allocations may differ from year to

[18] GAO, *Principles of Federal Appropriations Law*, 3rd ed., vol. I, pp. 91-97. Also see *In re LTV Aerospace Corp.*, 55 Comp. Gen. 307 (B-183851), October 1, 1975, http://www.gao.gov/products/428015#mt=e-report. The 1975 decision by the Comptroller General was later quoted in Supreme Court opinions, including *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) and *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 608 n.7 (2007) (Alito, J.) (plurality op.).

[19] Consolidated Appropriations Act, 2023 (Division F of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=290.

year for the same account. Nevertheless, the annual budget formulation process usually generates documents that establish a framework for how agencies sub-allocate funds during a given fiscal year and provide a basis for subsequent reallocation that facilitates congressional oversight. The framework typically includes

- an agency's budget justification to the appropriations committees, and[20]
- *report language* from
  - reports from the House and Senate Appropriations Committees that accompany an agency's annual appropriations bill reported by each committee, including tables that break down the funding for an agency's account into lower levels of aggregation; and
  - any relevant explanatory statement or joint explanatory statement that accompanies a conference report or final bill, which may also include tables.[21]

These explanatory statements typically include language establishing a priority between them and any earlier committee reports on the same bill.

Agency budget justifications and congressional report language generally reflect long-standing relationships between agencies and the appropriations committees. They may also result in a shared understanding between an agency and the committees of how funds will be sub-allocated and reallocated among and within PPAs within an account during a fiscal year.[22] These funding directives are generally not legally binding on agencies in the same way as the statutory text of appropriations acts, because committee reports do not meet the requirements of bicameralism and presentment under Article I, Section 7, of the Constitution.[23] In practice, however, agencies may treat funding directives as practically binding, because the report language indicates congressional intent for the use of the appropriations. If an agency chooses not to comply with such expectations, the agency might face consequences in future appropriations acts.[24]

# Transfers: Moving Funds from One Account to Another

Transfers—that is, the shifting of budgetary resources from one appropriations or fund account to another—typically involve movement of funds between accounts, either within an agency or across agency boundaries. Transfers are prohibited unless an agency has specific statutory authorization to do so.[25] This prohibition prevents an agency from transferring funds from one

[20] See CRS Report R47090, *Executive Agency Justification of the President's Budget: In Brief*, by Dominick A. Fiorentino.

[21] See CRS Report R44124, *Appropriations Report Language: Overview of Development and Components*, by Drew C. Aherne.

[22] See CRS Report R47333, *Reporting on Agency Budget Execution: Processes and Case Study Illustration*, by Dominick A. Fiorentino.

[23] The exception to this general rule is when allocations or directives are incorporated by reference into the statutory text of an appropriations act. In such cases, the incorporated directives are binding. For more information, see CRS Report R46899, *Regular Appropriations Acts: Selected Statutory Interpretation Issues*, by Sean M. Stiff.

[24] See CRS Report R46417, *Congress's Power Over Appropriations: Constitutional and Statutory Provisions*, by Sean M. Stiff.

[25] "An amount available under law may be withdrawn from one appropriation account and credited to another or to a working fund only when authorized by law" (31 U.S.C. §1532).

account to another in ways that may be inconsistent with the purposes for which Congress originally provided the funding. According to the GAO, all transfers are prohibited without statutory authority, including "(1) transfers from one agency to another, (2) transfers from one account to another within the same agency, and (3) transfers to an interagency or intra-agency working fund. In each instance statutory authority is required."[26]

Without prior statutory authority, an agency may not use budget authority from one appropriations account to pay for PPAs that are typically funded by another account. Without statutory authority, an agency may not use excess funds in one account to offset potential deficiencies in another account or shift funds from a project it considers a low priority to a project funded by a different account that it considers a higher priority.

There are statutory exceptions to this general restriction, and Congress may provide agencies with *transfer authority* either in authorizing statutes or appropriations measures. For example, an agency's movement of budget authority from a salaries and expenses account to a research and development account would be an example of a transfer.

Transfer authority may be broad or narrow in scope, and it may apply to all agencies, to select agencies, or to only a single agency. Transfer authority may also be restricted to a specific dollar amount. Alternatively, transfer authority may be "indefinite" (i.e., provided without a numerical limit on the dollar amount that may be transferred).[27] Indefinite transfer authority is typically provided with specific restrictions on the circumstances under which the authority may be used.

There are two types of transfers: *nonexpenditure* and *expenditure* transfers. A nonexpenditure transfer is a reallocation of funds from one account to another. This report focuses on nonexpenditure transfers. Expenditure transfers occur when one agency or agency component "purchases" goods or services from another agency or agency component.[28]

**Economy Act Expenditure Transfers**

Expenditure transfers are subject to the requirements included in, among other statutes, provisions that are informally referred to as the Economy Act. An expenditure transfer purchase is permitted only if (1) amounts for the purchase are available in the paying account, (2) the agency head determines that the purchase is in the best interest of the federal government, (3) the providing agency or component is able to offer or obtain by contract the ordered goods or services, and (4) the ordered goods or services cannot be provided cheaply or conveniently by contract from a commercial enterprise.[29]

Nonexpenditure transfers comprise all other transfers, including movement of funds from one account to another for the purpose of increasing the budgetary resources available to a specific recipient program or activity.

## Transfer Authority in Annual Appropriations Acts

Transfer authority in annual appropriations acts provides agencies with limited discretion to shift budget authority from one appropriations account or fund account to another. Within annual appropriations acts, transfer authority may be provided to a specific department or agency. Transfer authority may also be provided for a specific account, program, or purpose.

---

[26] GAO, *Principles of Federal Appropriations Law,* 3rd ed., vol. I, p. 2-24.

[27] The term *indefinite transfer authority* is used in this report to refer to transfer authority that has been provided without a specific dollar limit on the amount of funds that may be transferred.

[28] The Economy Act of 1932, as amended, 31 U.S.C. §1535. Expenditure transfers may also include transfers between federal funds groups.

[29] 31 U.S.C. §1535(a).

## Department-Wide and Agency-Wide Transfer Authority

Department-wide and agency-wide transfer authorities are often found in the sections of appropriations acts titled "General Provisions." Department-wide and agency-wide transfer authorities are typically provided with specific restrictions on the overall amount that a department or agency may transfer among its accounts in a given fiscal year. Additionally, Congress may restrict the increase in a single account's budget authority due to incoming transfers.

**Example of a Department-Wide Transfer Authority**

The Consolidated Appropriations Act, 2023, provided department-wide transfer authority to the Department of Homeland Security, subject to certain restrictions:[30]

> Up to 5% of any appropriation made available for the current fiscal year for the Department of Homeland Security by this act or provided by previous appropriations Acts may be transferred between such appropriations if the Committees on Appropriations of the Senate and the House of Representatives are notified at least 30 days in advance of such transfer, but no such appropriation, except as otherwise specifically provided, shall be increased by more than 10% by such transfer

In the above example, up to 5% of an appropriation available to the Department of Homeland Security (DHS) in FY2023 may be transferred to any other such appropriation, but the account to which funds are moved may not be increased by more than 10% of its original appropriation. For example, an account that was originally appropriated $10 million may accept a maximum of $1 million in incoming transfers.

## Account-Specific Transfer Authority

Transfer authority may also be found in the unnumbered paragraphs of an appropriations act that correspond to each account.[31] Account-specific transfer authorities allow or require agencies to transfer funds among specific accounts. These account-specific transfer authorities may be restricted to a specific dollar amount. Alternatively, account-specific transfer authority may be indefinite with respect to amount and restricted only to the amount of budget authority available in the transferring account. In such cases, the authority is often provided with specific restrictions on the purposes for which the authority may be used.

**Examples of Account-Specific Transfer Authorities**

**Dollar amount restrictions:** In the Consolidated Appropriations Act, 2023, the Secretary of Health and Human Services was authorized to transfer up to $455,000,000 between two accounts:[32]

> In addition to the amounts otherwise available for "Centers for Medicare & Medicaid Services, Program Management", the Secretary of Health and Human Services may transfer up to $455,000,000 to such account from the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund to support program management activity related to the Medicare Program.

---

[30] Consolidated Appropriations Act, 2023 (Division F of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=290.

[31] In such cases, the title of the account will typically state, in parentheses, that the paragraph includes "transfer of funds."

[32] Consolidated Appropriations Act, 2023 (Division H of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=426.

**Indefinite amounts:** In the Consolidated Appropriations Act, 2023, the Secretary of the Treasury was provided indefinite authority to transfer funds between two accounts:[33]

> The Secretary of the Treasury may transfer funds from the "Bureau of the Fiscal Service—Salaries and Expenses" to the Debt Collection Fund as necessary to cover the costs of debt collection: Provided, That such amounts shall be reimbursed to such salaries and expenses account from debt collections received in the Debt Collection Fund.

## Transfer Authority in Authorizing Statutes

While transfer authority provided in annual appropriations acts is often restricted to a specific dollar amount or percentage of the total budget authority provided, transfer authority in authorizing statutes is often broad or indefinite (i.e., provided without explicit caps on the amount of funds that may be transferred).[34] Generally, when indefinite transfer authority is provided in authorizing statutes, it is accompanied by specific restrictions on the circumstances under which the authority may be used. In addition, restrictions on indefinite transfer authority may be imposed by subsequently enacted legislation, such as annual appropriations acts. Two illustrations of these authorities are described below.

### Transfer Authority for Governmental Reorganization

Executive agencies may transfer funds in the context of a reorganization, when the responsibility to carry out functions or activities is transferred from one agency to another for which the funds were originally provided.

> The balance of an appropriation available and necessary to finance or discharge a function or activity transferred or assigned under law within an executive agency or from one executive agency to another may be transferred to and used (1) by the organizational unit or agency to which the function or activity was transferred or assigned; and (2) for a purpose for which the appropriation was originally available.[35]

This provision also applies when a function or activity that was previously under the jurisdiction of a single agency becomes the shared responsibility of two or more agencies. The statute provides executive agencies with authority to transfer funds only when there is a corresponding transfer of function authorized by law.[36] In cases of governmental reorganization, the authority to transfer funds may be temporary, periodic, or both—whichever is best suited for the associated transfer of function authorized by law. Generally, the authority to transfer funds ceases when the associated transfer of function or transition period is complete.

One example of government reorganization was the establishment of DHS. The Homeland Security Act of 2002 (HSA) provided for the transfer of multiple functions to the newly created

[33] Consolidated Appropriations Act, 2023 (Division E of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=201.

[34] For selected examples of transfer authority provided in authorizing statutes, see this report's **Appendix**.

[35] 31 U.S.C. §1531(a). A similar provision, which applies specifically to the Department of Defense, may be found in 10 U.S.C. §126.

[36] In addition, a statute that authorizes a transfer of function will typically require the agencies involved to enter into a transfer agreement prior to transferring functions or funds. Transfer agreements generally include (1) a detailed description of the functions, personnel, budgetary resources, and other assets that will be transferred; and (2) an estimate of the anticipated duration of the transition period. For discussion of agency reorganization, see CRS Report R44909, *Executive Branch Reorganization*, by Henry B. Hogue.

DHS.[37] To facilitate the transfer of functions, the HSA included multiple provisions authorizing the transfer of funds from these departments and agencies to DHS.[38]

### Transfer Authority for Inter- and Intra-Agency Coordination of Activities and Functions

Transfer authority may be provided when there is an ongoing need for coordinated funding of activities. When multiple agencies (or separately funded components of an agency) are responsible for achieving a specific policy objective over an extended period of time, permanent authority may be provided to facilitate ongoing, coordinated funding of certain activities.[39]

For example, the Central Intelligence Agency Act of 1949 allows the Central Intelligence Agency (CIA) to transfer or accept funds from any government agency if those transfers further the performance of certain functions, such as collection of intelligence through human sources, evaluation of intelligence related to national security, and coordination of intelligence collection activities outside the United States.[40] The Intelligence Reform and Terrorism Prevention Act of 2004 gives the Director of National Intelligence (DNI) authority to manage (and in some cases approve) transfers and reprogramming of certain intelligence-related funds, including funds made available under the National Intelligence Program and the Military Intelligence Program.[41] The Foreign Assistance Act of 1961, as amended, includes multiple provisions that allow the President to authorize transfers of select foreign assistance funds.[42]

## Restrictions on Reprogramming and Transfers

Appropriations or authorizing statutes that provide agencies with transfer authority often include restrictions on that authority. For example, transfers may be restricted to a specific dollar amount or to a certain percentage of the total amount appropriated for the transferring account, the receiving account, or both. Congress may also place limits on the amount of funds that an agency may reprogram. In addition, statutes may restrict the use of transferred or reprogrammed funds to specific purposes. Agencies are often required to notify the House and Senate Appropriations Committees a certain number of days prior to (or shortly after) carrying out transfers and reprogramming.

### Amount: *Not-to-Exceed* Provisions

Statutes that provide authority to transfer funds may place caps on the dollar amounts that may be transferred. Such caps are commonly referred to as *not-to-exceed* restrictions. Alternatively,

---

[37] P.L. 107-296; 116 Stat. 2135.

[38] In addition, provisions of the HSA provided authority to transfer personnel and assets such as property, facilities, contracts, and records. Selected examples of transfer authority granted as part of the DHS reorganization are discussed in the **Appendix**.

[39] Similar authority may be provided in annual appropriations acts, though the authority will frequently apply only to the funds provided by the appropriations and typically only for a single fiscal year. This section of the report focuses on the permanent authority that has been provided in authorizing statutes and which has, in some cases, been classified to or codified in the *U.S. Code*.

[40] 50 U.S.C. §3506(a).

[41] 50 U.S.C. §3024.

[42] 22 U.S.C. §2360. For discussion, see CRS In Focus IF11515, *U.S. Foreign Assistance: Budget Development and Execution*, by Nick M. Brown.

transfers may be restricted to a certain percentage of the total amount of budget authority appropriated or available for a given account.

Similar not-to-exceed conditions may also be imposed upon an agency's authority to reprogram funds. More frequently, however, the not-to-exceed conditions imposed on reprogramming are used to establish a threshold for congressional notification.

**Examples of Not-to-Exceed Provisions**

**Not-to-exceed restrictions (dollar amount):** The Consolidated Appropriations Act, 2023, provided the authority to transfer up to $368 million of certain funds appropriated to the Environmental Protection Agency:[43]

> The Administrator is authorized to transfer up to $368,000,000 of the funds appropriated for the Great Lakes Restoration Initiative under the heading "Environmental Programs and Management" to the head of any Federal department or agency … to carry out activities that would support the Great Lakes Restoration Initiative and Great Lakes Water Quality Agreement programs, projects, or activities.

**Not-to-exceed restrictions (percentage):** The Consolidated Appropriations Act, 2023, included the following restriction on the amount of funds that may be transferred between accounts at the Department of Commerce:[44]

> Not-to-exceed 5% of any appropriation made available for the current fiscal year for the Department of Commerce in this act may be transferred between such appropriations, but no such appropriation shall be increased by more than 10% by any such transfers.

## Amount: *No-Less-Than* Provisions

A statute may also mandate that a specific dollar amount (or no less than a specific dollar amount) be transferred from one account to another. Such provisions have been used to provide funds for special interagency fund accounts, where each participating agency is instructed to transfer a specific dollar amount or percentage of its appropriation to the fund (known as *mandated transfers*). *No-less-than* provisions have also been used to provide funds for inspector general offices. Such authorities are typically provided for accounting or administrative purposes rather than for the purpose of providing additional budgetary flexibility.

[43] Consolidated Appropriations Act, 2023 (Division G of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=341.

[44] Consolidated Appropriations Act, 2023 (Division B of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=61.

**Examples of No-Less-Than Provisions**

**Funding interagency accounts:** The Consolidated Appropriations Act, 2023, required the Department of Veterans Affairs to transfer a minimum of $15 million to an interagency account:[45]

> Of the amounts available in this title for "Medical Services", "Medical Community Care", "Medical Support and Compliance", and "Medical Facilities", a minimum of $15,000,000 shall be transferred to the DOD–VA Health Care Sharing Incentive Fund, as authorized by section 8111(d) of title 38, United States Code, to remain available until expended, for any purpose authorized by section 8111 of title 38, United States Code.

**Funding inspector general offices:** The Consolidated Appropriations Act, 2023, required the United States Patent and Trademark Office (USPTO) to transfer $2,450,000 to fund the Office of the Inspector General:[46]

> That within the amounts appropriated, $2,450,000 shall be transferred to the "Office of Inspector General" account for activities associated with carrying out investigations and audits related to the USPTO.

## Purpose: Restrictions on the Use of Reprogrammed or Transferred Funds

A general restriction in Title 31, Section 1532, of the *U.S. Code* states "an amount authorized to be withdrawn and credited is available for the same purpose and subject to the same limitations provided by the law appropriating the amount." This also applies to "policy restrictions," or language from an appropriations act that prohibits funds from being used for certain activities. Unless Congress explicitly provides otherwise, the policy restrictions attached to certain appropriated funds would remain in effect even if those funds are transferred to a different account or reprogrammed within an account.

New restrictions on the use of funds may be imposed by the provisions of law that provide transfer authority. Provisions granting transfer authority may restrict the use of transferred funds to items that are of a "higher priority" than the items for which the funds were originally appropriated. Other provisions may prohibit the use of transfer authority to fund PPAs for which Congress had previously denied funds.

[45] Consolidated Appropriations Act, 2023 (Division J of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=504.

[46] Consolidated Appropriations Act, 2023 (Division B of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=57.

**Examples of Purpose Restrictions on the Transfer of Funds**

**Prohibition on first-class travel:** The Consolidated Appropriations Act, 2023, prohibits the Food and Drug Administration from using appropriated funds on first class travel:[47]

> None of the funds appropriated or otherwise made available by this act may be used for first-class travel by the employees of agencies funded by this act in contravention of sections 301–10.122 through 301–10.124 of title 41, Code of Federal Regulations.

**New restrictions on transferred funds:** The Consolidated Appropriations Act, 2023, restricts use of certain transfer authority to situations in which the transfer is made for "higher priority items," so long as Congress has not denied a request to fund the higher priority item:[48]

> Upon determination by the Secretary of Defense that such action is necessary in the national interest, he may, with the approval of the Office of Management and Budget, transfer not to exceed $4,000,000,000 of working capital funds of the Department of Defense or funds made available in this act to the Department of Defense for military functions…. *Provided,* That such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item for which funds are requested has been denied by the Congress.

## Timing: Prohibition Against "Parking" or "Banking" Transferred Funds

The general restriction in Title 31, Section 1532, of the *U.S. Code*, whereby "an amount authorized to be withdrawn and credited is available for the same purpose and subject to the same restrictions provided by the law," also applies to the period of time during which appropriated funds are available for obligation. For example, unless statute provides otherwise, funds available for obligation for a single fiscal year (commonly referred to as *one-year* funds) remain available for obligation only for that fiscal year, even if those funds are transferred to an account that contains *multiyear* or *no-year* funds.[49] Transferring one-year funds to an account made available for a longer duration (or indefinitely) in an attempt to keep those funds available beyond their original, one-year period of availability is referred to as "parking" or "banking" the funds.[50] According to GAO, this practice is prohibited unless specifically authorized by law.[51] In order to extend the period of availability of appropriated funds, transfer authority may be provided with a proviso stating that the transferred funds will be "available for the same time period" as the appropriations to which they are transferred.

---

[47] Consolidated Appropriations Act, 2023 (Division A of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=39.

[48] Consolidated Appropriations Act, 2023 (Division c of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=100.

[49] Multiyear funds are appropriations that remain available for obligation for a fixed period of more than one fiscal year. No-year funds are appropriations that remain available until expended. GAO, *Glossary*, p. 22.

[50] GAO, *Principles of Federal Appropriations Law, Annual Update of the Third Edition*, GAO-12-413SP, March 2012, p. 5-15, http://www.gao.gov/products/GAO-12-413SP.

[51] GAO, *Principles of Federal Appropriations Law, Annual Update of the Third Edition*, p. 5-15.

**Example of Provision Extending the Availability of Transferred Funds**

**National Aeronautics and Space Administration (NASA) transfer authority:** The Consolidated Appropriations Act, 2023, provides NASA with authority to transfer up to 5% of any appropriation between its appropriations accounts:[52]

> Not to exceed 5% of any appropriation made available for the current fiscal year for the National Aeronautics and Space Administration in this act may be transferred between such appropriations…. Balances so transferred shall be merged with and available for the same purposes and the same time period as the appropriations to which transferred.

# Congressional Notification

Agencies may be required by statute to notify Congress prior to (or shortly after) carrying out certain transfers and reprogramming transactions. Often, such requirements involve agencies notifying the relevant House and Senate Appropriations Committees a certain number of days (often 15, 30, or 45 days) prior to transferring or reprogramming funds.

Within annual appropriations acts, the requirements for congressional notification of transfer and reprogramming actions are often found in the "General Provisions" section that is applicable to each department or agency. Transfer authority provisions may also include language stating that transfers are to be treated as "reprogrammings" and are thereby subject to the same restrictions and notification requirements imposed on reprogrammings by the applicable "General Provisions" section.

Typically, all account-to-account transfers require prior notification to Congress. Reprogramming actions generally require notification only when they exceed a certain dollar amount or "threshold." The reprogramming notifications received by the House and Senate Appropriations Committees are not publicly available. Reprogramming actions that fall below the threshold are handled internally and, in some cases, without any notification or prior approval required by Congress.

[52] Consolidated Appropriations Act, 2023 (Division B of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=90.

**Examples of Notification Provisions**

**Notification threshold:** The Consolidated Appropriations Act, 2023, contains a provision that requires the Department of State to notify the Committees on Appropriation 15 days in advance of any reprogramming in excess of $1 million:[53]

> None of the funds provided under titles I, II, and VI of this act or prior Acts making appropriations for the Department of State … shall be available for obligation or expenditure for programs, projects, or activities through a reprogramming of funds in excess of $1,000,000 or 10%, whichever is less … unless the Committees on Appropriations are notified 15 days in advance of such reprogramming of funds.

**"Transfers shall be treated as a reprogramming of funds:"** The Consolidated Appropriations Act, 2023, contains a provision that applies the reprogramming notification procedures to transfers of funds:[54]

> Not to exceed 5% of any appropriation made available for the current fiscal year for the Department of Commerce in this act may be transferred between such appropriations…. *Provided*, That any transfer pursuant to this section shall be treated as a reprogramming of funds under section 505 of this act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in that section.

## Treasury Reporting of Transfers

Nonexpenditure transfers are reported in Treasury's Central Accounting Reporting System (CARS).[55] OMB and Treasury collaborate to generate reports from CARS that are updated weekly and maintained on a page of the OMB MAX website.[56] These reports include the following information:

- Transfer amount,
- Effective date,
- Statutory authority for the transfer,
- Transferring Treasury Appropriation Fund Symbol (TAFS),[57] and
- Receiving TAFS.

These reports list transfers that occurred in practice and do not represent a list of all transfer authorities statutorily available to agencies.

---

[53] Consolidated Appropriations Act, 2023 (Division K of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=551.

[54] Consolidated Appropriations Act, 2023 (Division B of P.L. 117-328), https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf#page=61.

[55] Treasury Bureau of the Fiscal Service, *Treasury Financial Manual*, §2030.20.

[56] OMB, "Budget Execution Reports (Home): Nonexpenditure Transfers," https://community.max.gov/display/MAXInfo/Nonexpenditure+Transfers. This page of the OMB MAX website is not publicly available and requires a MAX account. Self-registration of a MAX account is available to federal government employees, congressional staff, and contractors with federal government email addresses.

[57] TAFS is a numerical identifier that describes an appropriation account as well as its period of availability. For example, if Congress appropriates funds for a given account that expire on two separate dates (i.e., two periods of availability), then there will be two TAFS associated with that account. As agencies are generally not permitted to mix funds with different periods of availability, they report obligations at the TAFS level. TAFS is used to track budget execution across several reporting mechanisms. For discussion, see CRS Report R47333, *Reporting on Agency Budget Execution: Processes and Case Study Illustration*, by Dominick A. Fiorentino.

# Agency Procedures and the Role of the Office of Management and Budget (OMB)

Agencies generally have internal procedures for determining when and how a transfer or reprogramming of funds will take place. Departments, their component bureaus, and other agencies may be required to obtain approval from the head of the agency, from the department secretary (e.g., if the transfer or reprogramming were to take place across multiple components of a department), and in some cases, from the director of OMB prior to transferring or reprogramming funds. In most instances these internal procedures are governed by agency directives and OMB guidance. Internal procedures for determining when and how to transfer or reprogram funds may vary by agency.

In some cases, specific department and agency procedures are required by statute. For example, the DNI may transfer or reprogram National Intelligence Program funds only (1) with the approval of the director of OMB and (2) after consulting with the heads of the affected agencies—including the director of the CIA if the adjustment involves CIA funding.[58]

Executive branch agencies are also subject to guidance and procedures established by OMB. For example, OMB's *Circular No. A-11* states that "unless a specific exemption is approved by OMB," all reprogramming requests are "subject to OMB clearance."[59] The circular instructs executive branch agencies to provide information to OMB five working days in advance to "allow adequate review time."[60] According to the circular, "OMB review of reprogramming requests may take longer in some circumstances (e.g., if the request has not been coordinated or if supporting materials have not been provided concurrently)."[61]

Transfers and reprogramming may also trigger certain accounting or financial management procedures. For example, increases or decreases in budget authority resulting from a transfer of funds may require a reapportionment of appropriated funds. With certain exceptions, the Antideficiency Act[62] requires that appropriated funds be apportioned (or divided)—by time period, function, or program—in order to prevent agencies from exhausting their appropriated funds prematurely.[63] Funds appropriated to executive agencies are apportioned by OMB, and *Circular No. A-11* instructs executive agencies to submit a reapportionment request to OMB when

---

58 P.L. 108-458, §1011(d)(3). Additional restrictions on cumulative amounts of transfers and congressional notification procedures, may be found in Sections 1011(d)(5), 1011(d)(6), and 1011(d)(7).

59 Office of Management and Budget (OMB), *Circular No. A-11*, "Preparation, Submission and Execution of the Budget," August 15, 2022, §22.3, pp. 106-107, https://www.whitehouse.gov/wp-content/uploads/2018/06/a11.pdf.

60 OMB, *Circular No. A-11*, §22.3.

61 OMB, *Circular No. A-11*, §22.3.

62 The collection of statutes commonly referred to as the Antideficiency Act has been codified in multiple sections of Title 31 of the *U.S. Code* (31 U.S.C. §§1341-1342, 1349-1350, 1511-1519).

63 Under Title 31, Section 1513(b)(1), of the *U.S. Code*, the President is statutorily responsible for apportioning funds for executive branch agencies. This responsibility has been delegated to OMB. For the legislative and judicial branches, apportionments are made by the officials who maintain administrative control of each appropriations account. Certain government entities are exempted from the apportionment requirements of the Antideficiency Act, including the Senate, the House of Representatives, congressional committees, and the Office of the Architect of the Capitol (31 U.S.C. §1511(b)(3)). See CRS Report R47019, *The Executive Budget Process: An Overview*, by Dominick A. Fiorentino and Taylor N. Riccard.

a transfer is over "$400,000 or 2% of the amount of total budgetary resources, whichever is lower."[64] In addition, transfers must also be entered into agencies' budget data entry systems.[65]

# Potential Issues for Congress

When appropriating funds to agencies, Congress must determine how to balance congressional prerogatives and control with agency flexibility. Transfer and reprogramming of appropriations provide agencies with the ability to make budgetary adjustments throughout the fiscal year. These adjustments may be necessary due to changing or unforeseen circumstances. Under such conditions, authority to transfer or reprogram funds may provide agencies with the flexibility needed to carry out the essential functions of the programs and activities for which funds have been provided. When done so in accordance with the applicable authority, procedures, and restrictions, transfers and reprogramming may enable agencies to operate more effectively or efficiently while still adhering to congressional intent, thereby preserving Congress's "power of the purse."

In addition, transfers and reprogramming of appropriated funds may have ramifications for congressional oversight of agency execution of enacted appropriations throughout the fiscal year. The sections below highlight some of the possible issues for Congress related to agency use of transfer and reprogramming authorities.

## Agency Reporting and Congressional Oversight of Reprogramming and Transfers

Congress may provide transfer authorities in authorizing statutes and appropriations measures. Information about agencies' use of transfer authorities, therefore, could help inform Congress's decisionmaking as it considers annual appropriations measures as well as authorizing legislation. Notification for reprogramming actions is typically triggered only when the reprogramming exceeds a certain dollar amount or "threshold." Reprogramming of relatively smaller amounts may be less evident, in part because smaller budgetary adjustments may have fewer or less restrictive notification requirements. In many cases, reprogramming actions that fall below a certain threshold are handled internally, without any notification required by Congress. As a consequence, such transactions may be less subject to congressional oversight.

Agencies are typically required to notify the relevant House and Senate Appropriations subcommittees when making transfers.[66] While some agencies, such as the Department of Defense, make these reports publicly available, others do not. For this reason, Members not serving on the Appropriations Committees may not have the same access to information on transfers. OMB and Treasury maintain reporting on nonexpenditure transfers based on data collected from agencies, but this reporting is not readily publicly available (see "Treasury Reporting of Transfers"). If Congress were interested in expanding agency reporting of transfers, it might consider requiring agencies, OMB, or Treasury to make information on transfers publicly available. Additionally, the House and Senate Appropriations Committees could choose to make the transfer reports they receive from agencies publicly available.

---

64 OMB, *Circular No. A-11*, §120.49.

65 For example, transfers by executive branch agencies are entered into the MAX A-11 Data Entry (MAX), which is a computer system used to collect and process much of the information required for preparing the President's budget. See https://max.omb.gov/maxportal.

66 In some instances, agencies are also required to notify the relevant authorizing committees.

Congress may also seek to expand reporting requirements relating to transfers. For example, Treasury's CARS system includes all nonexpenditure transfers that occurred during a fiscal year, along with a reference to the relevant statutory authority. Congress may consider requiring Treasury not only to make the transactions publicly available but also to create a new database containing all existing transfer authorities. This additional information, when combined with the data already existing in CARS, could allow Congress to analyze the frequency at which agencies use transfer authorities.

## Potential Burden of Transfer and Reprogramming Notifications

Additional reporting of transfers and reprogramming actions may enhance congressional oversight and identification of undesired or improper use of appropriated funds. On the other hand, the ability to adequately review transfers or reprogramming actions might become more difficult if reporting requirements were expanded. If Congress were to expand or otherwise modify existing notification requirements, one issue that may arise is the effect that the change might have on the number of notifications submitted in a given fiscal year and the resulting impact on congressional oversight.

For example, a 1989 GAO report on ways to reduce the burden of reprogramming notification requirements found that modest changes to reporting thresholds could significantly alter the number of notifications submitted in a given fiscal year.[67] The report also identified certain notification requirements that could be altered or eliminated without "significantly changing the current approach to congressional oversight."[68] The report concluded, however, that "given the various needs and concerns of individual Members, there is no clear consensus on how best to change the system."[69]

## Excessive or Improper Use of Transfer or Reprogramming Authorities

Overreliance on transfers or reprogramming actions may increase the administrative burden on agencies or, possibly, the oversight burden on congressional committees. GAO has noted several instances of perceived overreliance on reprogramming in response to unsound budgetary planning and financial management. For example, GAO found "in fiscal years 2003 and 2004, the [Army Corps of Engineers] reprogrammed funds over 7,000 times and moved over $2.1 billion among investigations and construction projects."[70] In this instance, GAO recommended that the Army Corps of Engineers "eliminate the use of excessive reprogramming actions" and "provide better financial management of project funds."[71]

In addition, misuse of transfer or reprogramming authorities (including a failure to adhere to congressional notification requirements) may cause an agency to spend funds in excess of its available appropriations. For example, in FY2009 DHS failed to notify the House and Senate

---

[67] GAO, *Ways to Reduce the Reprogramming Notification Burden and Improve Congressional Oversight*, NSIAD-89-202, September 21, 1989, p. 11, http://gao.gov/assets/220/211646.pdf.

[68] GAO, *Ways to Reduce the Reprogramming Notification Burden*, pp. 1, 11.

[69] GAO, *Ways to Reduce the Reprogramming Notification Burden*, p. 12.

[70] GAO, *Improved Planning and Financial Management Should Replace Reliance on Reprogramming Actions to Manage Project Funds*, GAO-05-946, September 16, 2005, pp. 3-6, http://gao.gov/assets/250/247774.pdf.

[71] GAO, *Improved Planning and Financial Management*, pp. 3-6. See also GAO, *Additional Guidance Would Enhance Financial Management and Communication of Candidate Protection Spending to Congress*, GAO-10-762, June 30, 2010, http://gao.gov/assets/310/306263.pdf.

Appropriations Committees at least 15 days prior to reprogramming $5.1 million to cover a shortfall in the U.S. Secret Service Presidential Candidate Campaign Protection PPA.[72] In 2010, GAO found that DHS had violated the notification requirements contained in its annual appropriations act, and as a result, the funds that DHS had reprogrammed and then spent for the U.S. Secret Service program were "unavailable for obligation."[73] For this reason, GAO concluded that DHS had violated the Antideficiency Act, which prohibits agencies from incurring obligations in excess or in advance of the amount of funds legally available.[74]

## Financial Management and Budgetary Treatment of Transferred Funds

Guidance from OMB and the Treasury provides agencies with standards for recording and tracking transactions involving transfers or reprogramming of funds.[75] Accurate and timely recording of transfers or reprogramming transactions is central to ensuring that agencies do not make budgetary adjustments in excess of the statutorily allowed constraints. In addition, sound financial management of these transactions is necessary to help ensure that transactions are not double-counted by the agencies involved in the transactions and that each account accurately reflects the amount of available budget authority. Failure to properly record transfers or reprogramming transactions could lead to under- or overestimating the amount of budgetary resources available, miscalculations in budgetary planning, and overspending at either the account or the PPA level. This, in turn, may pose challenges for congressional oversight of budget execution and agency operations.

Gradual or periodic transfers may pose additional challenges for financial management and auditing of both the parent and receiving agencies' accounts. For example, during a governmental reorganization, the transfer of multiple functions and their associated funds may take years to accomplish. The associated transfers of budgetary resources may be complex, particularly if funds will be transferred gradually throughout the transition period. This may pose unique issues for agencies as they develop and submit their budget requests in subsequent years.[76]

---

[72] GAO, *U.S. Secret Service—Statutory Restriction on Availability of Funds Involving Presidential Candidate Nominee Protection*, B-319009, April 27, 2010, http://gao.gov/assets/390/388698.pdf.

[73] GAO, *U.S. Secret Service*, pp. 3-4.

[74] GAO, *U.S. Secret Service*, p. 5.

[75] OMB, *Circular No. A-11*, §20; Department of the Treasury, "Chapter 2000: Warrant and Nonexpenditure Transfer (NET) Transactions," in *Treasury Financial Manual*, Part I, vol. 2, https://tfm.fiscal.treasury.gov/v1/p2/c200.

[76] OMB, *Circular No. A-11* acknowledges the difficulties surrounding these types of transfers, stating that "transfers between agencies resulting from Presidential reorganization plans or enacted reorganization legislation may involve unique problems." For example, in some cases it may be appropriate for the parent agency to exclude the related appropriations account from its submission while the receiving agency adds the account to its submission. In cases where the parent agency will continue to maintain funds for the transferred activities throughout the transition period, both the parent and receiving agencies may need to include the relevant accounts in their submissions. See OMB, *Circular No. A-11*, §82.14.

# Appendix. Selected Examples of Transfer Authority in Authorizing Statutes[77]

## Transfers of Function and Governmental Reorganization

### Transfers of functions and activities (31 U.S.C. §1531)

> (a) The balance of an appropriation available and necessary to finance or discharge a function or activity transferred or assigned under law within an executive agency or from one executive agency to another may be transferred to and used—
>
> > (1) by the organizational unit or agency to which the function or activity was transferred or assigned; and (2) for a purpose for which the appropriation was originally available.
>
> (b) The head of the executive agency determines the amount that, with the approval of the President, is necessary to be transferred when the transfer or assignment of the function or activity is within the agency. The President determines the amount necessary to be transferred when the transfer or assignment of the function or activity is from one executive agency to another.
>
> (c) A balance transferred under this section is—
>
> > (1) credited to an applicable existing or new appropriation account; (2) merged with the amount in an account to which the balance is credited; and (3) with the amount with which the balance is merged, accounted for as one amount.
>
> (d) New appropriation accounts may be established to carry out subsection (c)(1) of this section.

### Transfer of funds and employees (10 U.S.C. §126)

> (a) When a function, power, or duty or an activity of a department or agency of the Department of Defense is transferred or assigned to another department or agency of that department, balances of appropriations that the Secretary of Defense determines are available and needed to finance or discharge that function, power, duty, or activity, as the case may be, may, with the approval of the President, be transferred to the department or agency to which that function, power, duty or activity, as the case may be, is transferred, and used for any purpose for which those appropriations were originally available. Balances of appropriations so transferred shall—
>
> > (1) be credited to any applicable appropriation account of the receiving department or agency; or (2) be credited to a new account that may be established on the books of the Department of the Treasury; and be merged with the funds already credited to that account and accounted for as one fund. Balances of appropriations credited to an account under clause (1) are subject only to such limitations as are specifically applicable to that account. Balances of appropriations credited to an account under clause (2) are subject only to such limitations as are applicable to the appropriations from which they are transferred.
>
> (b) When a function, power, or duty or an activity of a department or agency of the Department of Defense is transferred to another department or agency of that department,

[77] This appendix includes selected examples of transfer authority provided in authorizing statutes. The appendix is not intended to provide an exhaustive list of all transfer authorities provided in authorizing statutes.

> those civilian employees of the department or agency from which the transfer is made that the Secretary of Defense determines are needed to perform that function, power, or duty, or for that activity, as the case may be, may, with the approval of the President, be transferred to the department or agency to which that function, power, duty, or activity, as the case may be, is transferred. The authorized strength in civilian employees of a department or agency from which employees are transferred under this section is reduced by the number of employees so transferred. The authorized strength in civilian employees of a department or agency to which employees are transferred under this section is increased by the number of employees so transferred.

### The Homeland Security Act of 2002 (P.L. 107-296; 116 Stat. 2135)

The HSA (P.L. 107-296; 116 Stat. 2135) provided for the transfer of multiple functions to the newly created DHS.[78] In total, the functions of all or part of 22 different federal departments and agencies were transferred to DHS. The HSA also abolished certain government entities, such as the Office of Science and Technology and the Immigration and Naturalization Service, and transferred their functions to newly created entities within DHS (e.g., the Science and Technology Directorate and U.S. Immigration and Customs Enforcement). To facilitate the transfer of functions, the HSA included multiple provisions authorizing the transfer of funds from these departments and agencies to DHS. Most of the statutory authorizations to transfer funds applied only during the transition period, which the act defined as "the 12-month period beginning on the effective date of this Act."[79]

For example, in conjunction with the transfer of certain functions related to inspection of agricultural imports, the HSA provided for periodic transfer of funds from the Department of Agriculture to DHS.[80]

> Out of funds collected by fees authorized under sections 2508 and 2509 of the Food, Agriculture, Conservation, and Trade Act of 1990 (21 U.S.C. 136, 136a), the Secretary of Agriculture shall transfer, from time to time in accordance with the agreement under subsection (e), to the Secretary funds for activities carried out by the Secretary for which such fees were collected.[81]

The HSA also provided authority for transfers of functions and funds from the Immigration and Naturalization Service to DHS. Title IV of the act reads, in part

> [U]nexpended balance[s] of appropriations, authorizations, allocations, and other funds employed, held, used, arising from, available to, or to be made available to, the Immigration and Naturalization Service in connection with the functions transferred by this subtitle … shall be transferred to the Director of the Bureau of Citizenship and Immigration Services for allocation to the appropriate component of the Department. Unexpended funds transferred pursuant to this paragraph shall be used only for the purposes for which the funds were originally authorized and appropriated.[82]

Elsewhere, the HSA granted the director of OMB broad authority to make "incidental transfers." The "Transitional Provisions" section of the act (Title XV, Subtitle B) reads in part

---

[78] Additional information and documents relating to the creation of DHS and subsequent reorganizations are available at http://www.dhs.gov/creation-department-homeland-security.

[79] P.L. 107-296, Title XV, Subtitle A, §1501(2); 6 U.S.C. §541.

[80] P.L. 107-296, Title IV, Subtitle C, §421(d); 6 U.S.C. §231.

[81] P.L. 107-296, Title IV, Subtitle C, §421(f); 6 U.S.C. §231(f)(1).

[82] P.L. 107-296, Title IV, Subtitle C, §456(b)(2); 6 U.S.C. §275(b)(2).

> The Director of the Office of Management and Budget, in consultation with the Secretary [of DHS], is authorized and directed to make such additional incidental dispositions of personnel, assets, and liabilities held, used, arising from, available, or to be made available, in connection with the functions transferred by this Act, as the Director may determine necessary to accomplish the purposes of this Act.[83]

## Provisions for Interagency Coordination and Select Military and Intelligence Activities

### Operations for which funds are not provided in advance: funding mechanisms—transfer authority (10 U.S.C. §127a(c))

> (1) Whenever there is an operation of the Department of Defense described in subsection (a), the Secretary of Defense may transfer amounts described in paragraph (3) to accounts from which incremental expenses for that operation were incurred in order to reimburse those accounts for those incremental expenses. Amounts so transferred shall be merged with and be available for the same purposes as the accounts to which transferred.
>
> (2) The total amount that the Secretary of Defense may transfer under the authority of this section in any fiscal year is $200,000,000.
>
> (3) Transfers under this subsection may only be made from amounts appropriated to the Department of Defense for any fiscal year that remain available for obligation, other than amounts within any operation and maintenance appropriation that are available for
>
>> (A) an account (known as a budget activity 1 account) that is specified as being for operating forces, or (B) an account (known as a budget activity 2 account) that is specified as being for mobilization.
>
> (4) The authority provided by this subsection is in addition to any other authority provided by law authorizing the transfer of amounts available to the Department of Defense. However, the Secretary may not use any such authority under another provision of law for a purpose described in paragraph (1) if there is authority available under this subsection for that purpose.
>
> (5) The authority provided by this subsection to transfer amounts may not be used to provide authority for an activity that has been denied authorization by Congress.
>
> (6) A transfer made from one account to another under the authority of this subsection shall be deemed to increase the amount authorized for the account to which the amount is transferred by an amount equal to the amount transferred.

### Appropriations for Defense intelligence elements: accounts for transfers; transfer authority (10 U.S.C. §429)

> (a) Accounts for Appropriations for Defense Intelligence Elements.—The Secretary of Defense may transfer appropriations of the Department of Defense which are available for the activities of Defense intelligence elements to an account or accounts established for receipt of such transfers. Each such account may also receive transfers from the Director of National Intelligence if made pursuant to Section 102A of the National Security Act of 1947 (50 U.S.C. 403–1), and transfers and reimbursements arising from transactions, as authorized by law, between a Defense intelligence element and another entity.

[83] P.L. 107-296, Title XV, Subtitle B, §1516; 6 U.S.C. §556.

Appropriation balances in each such account may be transferred back to the account or accounts from which such appropriations originated as appropriation refunds.

(b) Recordation of Transfers.—Transfers made pursuant to subsection (a) shall be recorded as expenditure transfers.

(c) Availability of Funds.—Funds transferred pursuant to subsection (a) shall remain available for the same time period and for the same purpose as the appropriation from which transferred, and shall remain subject to the same limitations provided in the act making the appropriation.

(d) Obligation and Expenditure of Funds.—Unless otherwise specifically authorized by law, funds transferred pursuant to subsection (a) shall only be obligated and expended in accordance with chapter 15 of title 31 and all other applicable provisions of law.

(e) Defense Intelligence Element Defined.—In this section, the term "Defense intelligence element" means any of the Department of Defense agencies, offices, and elements included within the definition of "intelligence community" under section 3(4) of the National Security Act of 1947 (50 U.S.C. 401a(4)).

## Support from Central Intelligence Agency (10 U.S.C. §444)

(a) Support Authorized.—The Director of the Central Intelligence Agency may provide support in accordance with this section to the Director of the National Geospatial-Intelligence Agency. The Director of the National Geospatial-Intelligence Agency may accept support provided under this section.

(b) Administrative and Contract Services.—

(1) In furtherance of the national intelligence effort, the Director of the Central Intelligence Agency may provide administrative and contract services to the National Geospatial-Intelligence Agency as if that agency were an organizational element of the Central Intelligence Agency. (2) Services provided under paragraph (1) may include the services of security police. For purposes of section 15 of the Central Intelligence Agency Act of 1949 (50 U.S.C. 403o), an installation of the National Geospatial-Intelligence Agency that is provided security police services under this section shall be considered an installation of the Central Intelligence Agency. (3) Support provided under this subsection shall be provided under terms and conditions agreed upon by the Secretary of Defense and the Director of the Central Intelligence Agency.

(c) Detail of Personnel.—The Director of the Central Intelligence Agency may detail personnel of the Central Intelligence Agency indefinitely to the National Geospatial-Intelligence Agency without regard to any limitation on the duration of interagency details of Federal Government personnel.

(d) Reimbursable or Nonreimbursable Support.—Support under this section may be provided and accepted on either a reimbursable basis or a nonreimbursable basis.

(e) Authority To Transfer Funds.—

(1) The Director of the National Geospatial-Intelligence Agency may transfer funds available for that agency to the Director of the Central Intelligence Agency for the Central Intelligence Agency. (2) The Director of the Central Intelligence Agency—(A) may accept funds transferred under paragraph (1); and (B) shall expend such funds, in accordance with the Central Intelligence Agency Act of 1949 (50 U.S.C. 403a et seq.), to provide administrative and contract services or detail personnel to the National Geospatial-Intelligence Agency under this section.

### Transfer of funds: procedure and limitations (10 U.S.C. §2214)

> (a) Procedure for Transfer of Funds.—Whenever authority is provided in an appropriation Act to transfer amounts in working capital funds or to transfer amounts provided in appropriation Acts for military functions of the Department of Defense (other than military construction) between such funds or appropriations (or any subdivision thereof), amounts transferred under such authority shall be merged with and be available for the same purposes and for the same time period as the fund or appropriations to which transferred.
>
> (b) Limitations on Programs for Which Authority May Be Used.—Such authority to transfer amounts—
>
>> (1) may not be used except to provide funds for a higher priority item, based on unforeseen military requirements, than the items for which the funds were originally appropriated; and (2) may not be used if the item to which the funds would be transferred is an item for which Congress has denied funds.
>
> (c) Notice to Congress.—The Secretary of Defense shall promptly notify the Congress of each transfer made under such authority to transfer amounts.
>
> (d) Limitations on Requests to Congress for Reprogrammings.—Neither the Secretary of Defense nor the Secretary of a military department may prepare or present to the Congress, or to any committee of either House of the Congress, a request with respect to a reprogramming of funds—
>
>> (1) unless the funds to be transferred are to be used for a higher priority item, based on unforeseen military requirements, than the item for which the funds were originally appropriated; or (2) if the request would be for authority to reprogram amounts to an item for which the Congress has denied funds.

### General Authorities of [Central Intelligence] Agency (50 U.S.C. §§3506(a)(1)-(3))

> (a) In general, in the performance of its functions, the Central Intelligence Agency is authorized to—
>
>> (1) Transfer to and receive from other Government agencies such sums as may be approved by the Office of Management and Budget, for the performance of any of the functions or activities authorized under section 3036 of this title, and any other Government agency is authorized to transfer to or receive from the Agency such sums without regard to any provisions of law limiting or prohibiting transfers between appropriations. Sums transferred to the Agency in accordance with this paragraph may be expended for the purposes and under the authority of this chapter without regard to limitations of appropriations from which transferred;
>>
>> (2) Exchange funds without regard to section 3651 of the Revised Statutes;
>>
>> (3) Reimburse other Government agencies for services of personnel assigned to the Agency, and such other Government agencies are authorized, without regard to provisions of law to the contrary, so to assign or detail any officer or employee for duty with the Agency.

### The Intelligence Reform and Terrorism Prevention Act of 2004 (50 U.S.C. §3024)

The Intelligence Reform and Terrorism Prevention Act of 2004 established the Office of the Director of National Intelligence and provided the Director with certain authorities to manage (and in some cases approve) transfers and reprogramming. Section 1011(d) of the act describes the role of Director of National Intelligence (DNI) in the transfer and reprogramming of

intelligence fund, including multiple duties that had previously been the responsibility of the Secretary of Defense or the CIA director:

> No funds made available under the National Intelligence Program may be transferred or reprogrammed without the prior approval of the Director of National Intelligence, except in accordance with procedures prescribed by the Director of National Intelligence…. (d)(2) Subject to the succeeding provisions of this subsection, the Director of National Intelligence may transfer or reprogram funds appropriated for a program within the National Intelligence Program to another such program.[84]

> The Secretary of Defense shall consult with the Director of National Intelligence before transferring or reprogramming funds made available under the Joint Military Intelligence Program.[85]

The act also established restrictions on the transfer authority of the DNI. For example, under certain circumstances, the DNI must consult with the CIA director and the heads of other intelligence agencies:

> (3) The Director of National Intelligence may only transfer or reprogram funds referred to in subparagraph (A)—(A) with the approval of the Director of the Office of Management and Budget; and (B) after consultation with the heads of departments containing agencies or organizations within the intelligence community to the extent such agencies or organizations are affected, and, in the case of the Central Intelligence Agency, after consultation with the Director of the Central Intelligence Agency.[86]

The act also established "not-to-exceed" and programmatic restrictions on funds available for transfer and reprogramming:

> (4) The amounts available for transfer or reprogramming in the National Intelligence Program in any given fiscal year, and the terms and conditions governing such transfers and reprogrammings, are subject to the provisions of annual appropriations Acts and this subsection.

> (5)(A) A transfer or reprogramming of funds or personnel may be made under this subsection only if—(i) the funds are being transferred to an activity that is a higher priority intelligence activity; (ii) the transfer or reprogramming supports an emergent need, improves program effectiveness, or increases efficiency; (iii) the transfer or reprogramming does not involve a transfer or reprogramming of funds to a Reserve for Contingencies of the Director of National Intelligence or the Reserve for Contingencies of the Central Intelligence Agency; (iv) the transfer or reprogramming results in a cumulative transfer or reprogramming of funds out of any department or agency, as appropriate, funded in the National Intelligence Program in a single fiscal year—(I) that is less than $150,000,000, and (II) that is less than 5 percent of amounts available to a department or agency under the National Intelligence Program; and (v) the transfer or reprogramming does not terminate an acquisition program.

> (5)(B) A transfer or reprogramming may be made without regard to a limitation set forth in clause (iv) or (v) of subparagraph (A) if the transfer has the concurrence of the head of the department involved or the Director of the Central Intelligence Agency (in the case of the Central Intelligence Agency). The authority to provide such concurrence may only be delegated by the head of the department or agency involved to the deputy of such officer.

---

[84] P.L. 108-458, §§1011(d)(1)(A) and 1011(d)(2).

[85] P.L. 108-458, §1011(d)(1)(B).

[86] P.L. 108-458, §1011(d)(3).

> (6) Funds transferred or reprogrammed under this subsection shall remain available for the same period as the appropriations account to which transferred or reprogrammed.[87]

Finally, the act established the following procedures for congressional notification of transfer or reprogramming of funds:

> (7) Any transfer or reprogramming of funds under this subsection shall be carried out in accordance with existing procedures applicable to reprogramming notifications for the appropriate congressional committees. Any proposed transfer or reprogramming for which notice is given to the appropriate congressional committees shall be accompanied by a report explaining the nature of the proposed transfer or reprogramming and how it satisfies the requirements of this subsection. In addition, the congressional intelligence committees shall be promptly notified of any transfer or reprogramming of funds made pursuant to this subsection in any case in which the transfer or reprogramming would not have otherwise required reprogramming notification under procedures in effect as of the date of the enactment of this subsection.[88]

## Transfer Authority for the Coordination of Foreign Assistance and Development Activities

### The Foreign Assistance Act of 1961 (22 U.S.C. §2360)

The Foreign Assistance Act of 1961 (FAA), as amended, provides the President with the authority to transfer selected foreign assistance funds. The Foreign Assistance Act of 1962 (P.L. 87-565; 76 Stat. 255) added the following provision to the FAA:

> Sec. 610. Transfer Between Accounts.—(a) Whenever the President determines it to be necessary for the purposes of this Act, not to exceed 10 per centum of the funds made available for any provision of this Act (except funds made available pursuant to title IV of chapter 2 of part I or for section 23 of the Arms Export Control Act) may be transferred to, and consolidated with, the funds made available for any provision of this Act, (except funds made available under chapter 2 of part II of this Act) and may be used for any of the purposes for which such funds may be used, except that the total in the provision for the benefit of which the transfer is made shall not be increased by more than 20 per centum of the amount of funds made available for such provision. (b) The authority contained in this section and in sections 451, 506, and 614 shall not be used to augment appropriations made available pursuant to sections 636(g)(1) and 637 or used otherwise to finance activities which normally would be financed from appropriations for administrative expenses.[89]

### The Foreign Assistance Act of 1973 (P.L. 93-189; 87 Stat. 714)

The Foreign Assistance Act of 1973 amended the FAA, in part by adding a provision that provides the President with the authority to transfer selected foreign assistance funds. This authority is in addition to the transfer authority already provided under Sections 610(a). This provision is now Section 109 of the FAA:

> Sec. 109. Transfer of Funds.—Whenever the President determines it to be necessary for the purposes of this chapter, not to exceed 15 per centum of the funds made available for any provision of this chapter may be transferred to, and consolidated with, the funds made available for any other provision of this chapter, and may be used for any of the purposes

---

[87] P.L. 108-458, §§1011(d)(4), 1011(d)(5)(A), 1011(d)(5)(B), and 1011(d)(6).

[88] P.L. 108-458, §1011(d)(7).

[89] Foreign Assistance Act of 1962 (P.L. 87-565, §301(a); 76 Stat. 255).

for which such funds may be used, except that the total in the provision for the benefit of which the transfer is made shall not be increased by more than 25 per centum of the amount of funds made available for such provision. The authority of sections 610(a) and 614(a) of this Act may not be used to transfer funds made available under this chapter for use for purposes of any other provision of this Act except that the authority of such sections may be used to transfer for the purposes of section 667 not to exceed five per centum of the amount of funds made available for section 667(a)(1).[90]

## Provisions Authorizing Transfers of Certain Unobligated Balances

### Department of Agriculture, Rural Development Disaster Assistance Fund (7 U.S.C. §6945)

(a) Rural Development Disaster Assistance Fund—On and after September 30, 2008, there is established in the Treasury a fund entitled the "Rural Development Disaster Assistance Fund." …

(e) Transfer of prior appropriations to Fund—The Secretary of Agriculture may transfer to the Rural Development Disaster Assistance Fund, and merge with other amounts generally appropriated to the Fund, the available unobligated balance of any amounts that were appropriated before September 30, 2008, for programs and activities of the Rural Development Mission Area to respond to a disaster and were designated by the Congress as an emergency requirement if, in advance of the transfer, the Secretary determines that the unobligated amounts are no longer needed to respond to the disaster for which the amounts were originally appropriated and the Secretary provides a certification of this determination to the Committees on Appropriations of the House of Representatives and the Senate.

### Department of State, Nondiscretionary personnel costs, currency fluctuations, and other contingencies (22 U.S.C. §2696)

(b) Appropriations authorization based on currency fluctuations

(1) In order to maintain the levels of program activity for the Department of State provided for each fiscal year by the annual authorizing legislation, there are authorized to be appropriated for the Department of State such sums as may be necessary to offset adverse fluctuations in foreign currency exchange rates, or overseas wage and price changes, which occur after November 30 of the earlier of—(A) the calendar year which ended during the fiscal year preceding such fiscal year, or (B) the calendar year which preceded the calendar year during which the authorization of appropriations for such fiscal year was enacted….

(7) (A) Subject to the limitations contained in this paragraph, not later than the end of the fifth fiscal year after the fiscal year for which funds are appropriated or otherwise made available for an account under "Administration of Foreign Affairs", the Secretary of State may transfer any unobligated balance of such funds to the Buying Power Maintenance account. (B) The balance of the Buying Power Maintenance account may not exceed $100,000,000 as a result of any transfer under this paragraph. (C) Any transfer pursuant to this paragraph shall be treated as a reprogramming of funds under section 2706 of this title and shall be available for obligation or expenditure only in accordance with the procedures under such section. (D) The

[90] Foreign Assistance Act of 1973 (P.L. 93-189, §2(3); 87 Stat. 714).

> authorities contained in this paragraph may be exercised only with respect to funds appropriated or otherwise made available after fiscal year 2008.

### Department of the Treasury, Foreign Currency Fluctuations Account, American Battle Monuments Commission Account (36 U.S.C. §2109)

> (a) Establishment and Purpose.—There is an account in the Treasury known as the "Foreign Currency Fluctuations, American Battle Monuments Commission, Account". The Account shall be used to provide amounts, in addition to amounts appropriated for salaries and expenses of the Commission, to pay the cost of salaries and expenses that exceeds the amount appropriated for salaries and expenses because of fluctuations in currency exchange rates of foreign countries occurring after a budget request for the Commission is submitted to Congress. The Account may not be used for any other purpose….
>
> (e) Unobligated Balances.—The unobligated balance of an appropriation for salaries and expenses may be transferred to the Account not later than the end of the second fiscal year following the fiscal year for which the appropriation was made. The unobligated balance shall be merged with, and be available for the same period and purposes as, the Account.

## Author Information

Taylor N. Riccard
Analyst in Government Organization and Management

Dominick A. Fiorentino
Analyst in Government Organization and Management

## Acknowledgments

This report supersedes CRS Report R43098, which was originally written by Michelle D. Christensen, Analyst in Government Organization and Management. Mari Y. Lee, Visual Information Specialist, collaborated on this report's figure.

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.