# EXHIBIT 6

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

February 17, 2023

THE ADMINISTRATOR

**MEMORANDUM**

**SUBJECT**: Principles and Best Practices for Oversight of State Implementation and Enforcement of Federal Environmental Laws

**FROM**: Michael S. Regan
Administrator

**TO**: Assistant Administrators
Regional Administrators
Deputy Assistant Administrators
Deputy Regional Administrators

**Introduction and Purpose**

Many of the Environmental Protection Agency's (EPA or the Agency) governing statutes allow states[1] to act as the primary implementers and enforcers of federal environmental laws and EPA regulations, whether through implementation of authorized, approved, or delegated programs or because the pertinent federal statute invests states with initial implementation responsibilities.[2] EPA maintains a critical role to ensure the just and equitable implementation and enforcement of state-implemented programs across all 50 states, the District of Columbia, U.S. territories, and, in some cases, local governments; and to take direct action where appropriate.

The Agency has long been guided by three principles: follow the science, follow the law, and be transparent. In a 1984 Memorandum on EPA Policy on Oversight of State Delegated Environmental Programs (1984 Memorandum) then-Administrator William Ruckelshaus established goals and approaches to oversight of federal programs implemented by the states, post-delegation roles and responsibilities of EPA and States, and objectives for implementation.[3] In 2018, then Acting Administrator Andrew Wheeler issued a Memorandum titled "Principles and Best Practices for Oversight of Federal Environmental Programs Implemented by States and Tribes" (2018 Memorandum) to "complement" the 1984 Memorandum.[4] However, implementation of the 2018 Memorandum has

[1] This memorandum focuses only on federal programs implemented by the states; it does not apply to federally recognized Indian tribes, territories, or local governments.
[2] For the purposes of this memorandum, we refer to these activities as "federal programs implemented by the states."
[3] Memorandum from William D. Ruckelshaus, Administrator, EPA Policy on Oversight of State Delegated Environmental Programs (Apr. 4, 1984).
[4] Memorandum from Andrew Wheeler, Acting Administrator, Principles and Best Practices for Oversight of Federal Environmental Programs Implemented by States and Tribes (Oct. 30, 2018).

further convoluted the issues involved, rather than providing the "certainty" it sought to provide. Furthermore, since issuance of the 2018 Memorandum, as part of its *FY2022-2026 Strategic Plan*, EPA added a fourth foundational principle to those noted above, that of advancing justice and equity.[5] Therefore, in light of these developments, this memorandum rescinds and replaces the 2018 Memorandum to clarify expectations of how the Agency will provide oversight for federal programs implemented by the states.

**The EPA-State Relationship**

For many federal environmental laws, implementation is a shared responsibility of state and federal government. It is the job of Congress to establish the law; EPA then implements the law and sets national environmental standards. States can then seek approval, authorization, or delegated authority to implement and enforce those standards – or go beyond them – within their borders. The Agency, however, remains ultimately responsible and accountable to the President, Congress, and the public for ensuring that states are appropriately implementing programs and making the statutorily required progress toward meeting national environmental goals and standards.

This model of cooperative federalism does not mean that EPA no longer has responsibilities for or defers to states regarding federal programs implemented by the states. Rather, cooperative federalism means that states and EPA as co-regulators have a shared commitment to work together to protect human health and the environment, taking advantage of the strengths and capabilities of both federal and state authorities. This is particularly important given limited resources at all levels of government. Communities are best served when federal and state entities can leverage each other's expertise, legal authorities, and financial resources.

The Agency recognizes the importance of early, meaningful, and substantial involvement by the Agency's state partners in the development, implementation, and enforcement of the nation's environmental programs. Each state has a unique understanding of longstanding and emerging environmental and public health challenges within its jurisdiction; relationships with communities, regulated businesses, local government, and the wide range of interested stakeholders; and firsthand knowledge of how to design programs to address those challenges. Moreover, thoughtful, deliberate, and transparent collaboration across all levels of government is critical to tackling the deep-seated and systemic challenges faced by communities that are disproportionately burdened by environmental pollution and its negative health impacts.

**EPA's Oversight Responsibilities**

Agency oversight of federal programs implemented by the states is a critical element of protecting all residents of the United States, including and especially those in communities that have been historically marginalized, underserved, and overburdened by pollution and for whom we must ensure we achieve our shared mission. Agency oversight also ensures fair and equitable expectations for the regulated

[5] This addition reflects the Agency's commitment to the fair treatment and meaningful involvement of all people regardless of race, color, national origin, or income with respect to the development, implementation, and enforcement of environmental laws, regulations, and policies; and the enforcement of federal civil rights laws that protect against discrimination on the basis of race, color, national origin (including limited English proficiency), sex, age, and disability.

community regarding compliance and enforcement of national environmental laws. This includes our shared obligation to ensure that the regulatory processes such as development of rules, issuance of permits, clean-up of contaminated lands, etc., identify and account for the disproportionate burden faced by certain communities and the relationship of those burdens to the cumulative impacts such communities face. Further, federal oversight acknowledges that air, water, and land pollution do not respect state boundaries; the interstate impacts of pollution affect public health inside and outside of state borders and implicate downwind and downstream states' own obligations under the Clean Air Act, Clean Water Act, and other federal environmental laws. The Agency implements these oversight responsibilities via a wide spectrum of activities, ranging from formal, retrospective reviews of program implementation that occur on a regular basis such as the State Review Framework, Permit Quality Review process, Resource Conservation and Recovery Act Permit Oversight Strategy, and other processes; to scheduled meetings between EPA and state program managers; to matter-specific consultations on high-profile or urgent matters. These oversight initiatives continue to be refined and to inform the development of best practices, learning, and ultimately, transfer of good ideas from one state to another.

By this memorandum, EPA is reaffirming the position laid out in the 1984 Memorandum, which states: "EPA's oversight responsibility is to ensure the even-handed application and enforcement of federal environmental laws, regulations and standards, and to provide states with the necessary assistance, tools, methods, and back-up support to solve environmental problems."[6] The Agency's Regional Offices have primary responsibility for overseeing state implementation and enforcement of federal environmental laws, as they are "best placed to tailor evaluations and assistance to address specific state needs and take into account past performance of state programs, within the context of meeting national environmental goals and requirements."[7] Agency Headquarters and Regional Offices are collectively responsible for developing and making available program-specific state oversight resources and guidance documents[8] that enable effective Regional Office oversight and consistency.

**Effective Communication, Consultation, and Engagement**

The Agency believes an open, cooperative, and collaborative partnership with our state partners will enable us to do the best job for our communities. Early and frequent communication – from EPA to states and from states to EPA – should be a cornerstone of this partnership on policy development, enforcement, and other matters. States and EPA have many venues for engagement, including annual discussions around grant and work planning, target-setting, and reporting, and regular engagement with many state associations like the Environmental Council of the States and its program-specific counterparts. In particular, given the primary responsibility of EPA Regional Offices for overseeing state implementation, senior state and EPA Regional Office leaders should speak regularly, both formally and informally, with their counterparts. While a state may ultimately disagree with an Agency decision, strategic objective, or resource allocation, the Agency remains committed to engaging our state partners to solicit their views, find common ground to the greatest extent practicable, and communicate throughout the decision-making process.

---

[6] Memorandum from William D. Ruckelshaus, Administrator, *EPA Policy on Oversight of State Delegated Environmental Programs* (April 4, 1984).
[7] Ibid.
[8] U.S. EPA, "State Oversight Resources and Guidance Documents," https://www.epa.gov/compliance/state-oversight-resources-and-guidance-documents.

An important component of EPA's effective communication with state partners is the federalism consultation process established by the Federalism Executive Order 13132 (Aug. 4, 1999) for rulemakings that would have a substantial impact on state and local governments. Through early and meaningful engagement, EPA is able to thoughtfully consider each state's unique geographic, social, and political conditions and existing regulatory programs as it strives to develop durable environmental and public health policies.

For their part, states should collect, maintain, and share data with EPA about environmental outcomes, compliance and enforcement actions, and other activities the Agency may need to conduct effective oversight. States also should share best practices and innovative approaches with EPA as a means to improve development and implementation of environmental laws at a national scale.

**Enforcement and Compliance with Environmental Laws**

The Agency and authorized states have a joint responsibility to achieve and maintain high levels of compliance with the nation's environmental laws by monitoring compliance and, when violations are found, taking action to return regulated entities to compliance and deter future noncompliance. States are responsible for the primary day-to-day implementation and enforcement of federal programs implemented by the states, while EPA retains concurrent enforcement authority, provides support for state capacity-building, and is responsible for overseeing state-implemented programs. The Agency is ultimately responsible for fair and effective enforcement of federal requirements and credible national deterrence of noncompliance. If a state partner is not taking timely or appropriate action to address threats to public health and the environment, EPA has the authority and responsibility to take direct action. The Agency will engage states as early as possible to address these threats as partners unless doing so prevents the Agency from protecting human health and the environment for all residents of the United States.

An effective federal-state partnership – achieved through coordination, communication, and the use of our joint resources in a complementary way – will achieve greater compliance, deterrence, and public protection.

Cooperative, periodic, and early joint planning and regular communication between EPA and states are essential to promote shared accountability and effective implementation by and between federal and state enforcement authorities. A "no surprises" principle is the foundation of joint work planning and will minimize the misunderstandings that can be caused by a lack of regular communication.

Agency actions in states should ordinarily be discussed as part of this joint planning process or as soon in the process as possible. For the discussion of cases where EPA is considering action, in some situations, it may make more sense for a state to take the lead on an action; alternatively, states and EPA may agree that EPA should take the lead. Finally, EPA may choose to take direct action under its concurrent enforcement authority in certain situations, such as:

1. National policy priorities and areas where EPA's Office of Environmental Compliance and Assurance (OECA) has determined that nationally consistent results and national deterrence are important, including National Enforcement and Compliance Initiatives.

2. Emergency situations or situations in which EPA is poised to supplement state action when there is substantial risk to human health or the environment.

3. Significant or health-based violations that the state has not timely or appropriately addressed, especially in communities already overburdened by pollution.

4. Inspections of facilities to verify or review state inspections of those facilities.

5. Actions at federal and state-owned facilities or actions involving facilities in multiple states.

6. Actions at the request of states.[9]

Even where EPA chooses to take direct action, the Agency will strive to work and communicate with its state partners.

**Enforcement of Civil Rights Law**

As described in this memorandum, EPA recognizes the importance of building and maintaining strong partnerships with states to implement the nation's cornerstone environmental laws. In addition, EPA acknowledges the importance of enforcing federal civil rights laws, which create independent obligations on states as recipients of federal financial assistance in addition to the nation's environmental laws. In this context, EPA has responsibility for oversight and enforcement of civil rights compliance.

Ensuring compliance with civil rights laws is a fundamental responsibility and vital to the Agency's efforts to advance equity and environmental justice. EPA should strive to work constructively with states toward effective outcomes in communities. An open relationship and effective communication between EPA and states is important to this effort and includes technical assistance to states to strengthen state nondiscrimination programs and promote compliance. Vigorous oversight of compliance with civil rights laws is essential to address historical and systemic barriers on the basis of race, color, national origin (including limited-English proficiency), sex, age, and disability that contribute to environmental injustice and the disproportionate burden of pollution in particular communities.

* * * * *

Communities are best served when EPA and the states act in partnership using all available resources and authorities. The principles established in the 1984 Memorandum and supplemented in this memorandum ensure EPA's strong support to states implementing federal programs, while reaffirming EPA's commitment to take action as necessary to maintain high national environmental standards, protect human health, and advance justice and equity.

---

[9] Although this memorandum focuses only on federal programs implemented by the states, the Agency recognizes that a Tribe may request EPA to take action on State lands to address a facility or situation that may affect the Tribe. In such case, EPA would evaluate the situation and take any appropriate action, likely under one of the previous five categories.